J-A04006-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| L.J.L., | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| E.N.C., | |
| Appellant | No. 2960 EDA 2016 |

Appeal from the Order Entered August 22, 2016
In the Court of Common Pleas of Chester County
Civil Division at No(s): 2015-09911

BEFORE:  SHOGAN, SOLANO, and PLATT,[*] JJ.

MEMORANDUM BY SHOGAN, J.:                FILED MARCH 31, 2017

E.N.C. ("Father") appeals from the order entered on August 22, 2016, permitting L.J.L. ("Mother") to relocate with the parties' minor daughter, E.G.C. ("Child"), from Coatesville, Pennsylvania, to Marlton, New Jersey.[1] The order also awarded shared legal custody to the parties, primary physical custody to Mother, and partial physical custody to Father.  We affirm.

The trial court set forth the factual background and procedural history of this case as follows:

> [Mother] and [Father] are the parents of [Child], born [in April of 2012].  The parties were never married.  On October 22,

_____

[*]  Retired Senior Judge assigned to the Superior Court.

[1] The order on appeal is dated August 19, 2016, but it was not entered on the trial court docket until August 22, 2016.

2015, Mother filed a Complaint in Custody. Mother, Father and [Child] resided in Coatesville, Pennsylvania until November of 2015 when Mother and [Child] moved to Marlton, New Jersey. On January 7, 2016, Father filed an Emergency Petition Objecting to Proposed Relocation. After continuances, [the trial court] held trial on Father's emergency petition on May 23, 2016. On August [22], 2016, [the trial court] permitted Mother to relocate from Chester County, Pennsylvania to Evesham Township, New Jersey with [Child]. As [the trial court] explained in the footnote to the August [22], 2016 Order, the parties' counsel informed the [c]ourt that an agreed temporary Order was entered into by the parties in January 2016, and "filed" with the [c]ourt. This agreed Order was to serve as the basis of the final Order to be entered after trial. Despite diligent research of counsel, the Family Court Administrator and the Prothonotary, no such agreed Order was located or filed of record. Counsel was eventually able to provide me with a nearly illegible copy, the terms of which were incorporated into the May 23, 2016 Order.[1]

> [1] On June 21, 2016, Father filed a Notice of Appeal. On July 15, 2016, the Superior Court [*sua sponte*] quashed the appeal because there was no order entered [in regard to the May 23, 2016 custody trial]. [**L.J.L. v. E.N.C.**, Superior Court Docket No.] 1892 EDA 2016.

On August 31, 2016, Father filed a Motion for Reconsideration of the August 19, 2016 Order. On September 9, 2016, [the trial court] denied Father's Motion for Reconsideration.

Trial Court Opinion, 9/30/16, at 1-2.[2]

_____

[2] At the custody trial on May 23, 2016, Mother appeared with her counsel, Attorney Alexander R. Ferrante, and testified on her own behalf. Father appeared with his counsel, Attorney D. Scott Bonebrake, and testified on his own behalf. At the custody trial on May 23, 2016, the parties discussed the January 16, 2016 agreement of the parties. N.T., 5/23/16, at 176-178. The trial court orally stated its order on the record at the conclusion of the custody trial on May 23, 2016, but there was no written order entered on
*(Footnote Continued Next Page)*

On September 12, 2016, Father timely filed a notice of appeal, along with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).

Father raises the following issues for our review:

A. Whether the trial court erred and/or abused its discretion in allowing Mother to relocate 68 miles away and across state lines with the child to Marlton, New Jersey, where Mother did not meet her burden of proof that it was in the child's best interest to do so, considering all relevant factors, including the relocation factors listed in 23 Pa.C.S. §5337(h), and where the court failed to provide adequate reasons for its decision, or an adequate assessment of the facts as they related to the present case[?]

B. Whether the trial court erred and/or abused its discretion by allowing Mother to relocate although no advance notice of relocation, or a counter-affidavit, was provided to Father, in violation of Pa.R.C.P. §1915.17 and 23 Pa.C.S. §5337, which is considered a statutory factor against relocation, and a basis to return the child to Father, under 23 Pa.C.S. §5337(i)[?]

C. Whether the trial court erred and/or abused its discretion when it allowed relocation, by, in part, granting a presumption in favor of Mother, since relocation had already occurred and the court did not wish to see the child move again, despite the language of 23 Pa.C.S. §5337(a), which clearly states that no presumption is to be made in favor of the relocating party, if the relocation had already occurred at the time of the hearing[?]

_(Footnote Continued)_ ⸻

the trial court docket. After this Court quashed Father's first appeal, the trial court entered its written order on the docket on August 22, 2016. The trial court incorporated its on-record consideration of the custody best-interest and relocation factors, set forth at 23 Pa.C.S. §§ 5328(a) and 5337(h), respectively. Trial Court Opinion, 9/30/16, at 4-5. This Court has held that, in order to be sufficiently specific to be enforced, an order of custody must be entered as a separate written order, or as a separate section of a written opinion. **_R.L.P. v. R.F.M._**, 110 A.3d 201, 203 (Pa. Super. 2015).

D. Whether the trial court erred and/or abused its discretion in permitting relocation despite providing no valid reason in support of relocation, and where relocation will serve to impede child's time with Father and Father's family[?]

Father's Brief at 13.

In custody cases under the Child Custody Act ("the Act"), 23 Pa.C.S.

§§ 5321-5340, our standard of review is as follows:

> In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*C.R.F. v. S.E.F.*, 45 A.3d 441, 443 (Pa. Super. 2012) (citation omitted).

We have stated:

> The discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned. Indeed, the knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.

*Ketterer v. Seifert*, 902 A.2d 533, 540 (Pa. Super. 2006) (quoting

*Jackson v. Beck*, 858 A.2d 1250, 1254 (Pa. Super. 2004)).

In **M.A.T. v. G.S.T.**, 989 A.2d 11 (Pa. Super. 2010) (*en banc*), we

stated the following regarding an abuse of discretion standard:

> Although we are given a broad power of review, we are constrained by an abuse of discretion standard when evaluating the court's order. An abuse of discretion is not merely an error of judgment, but if the court's judgment is manifestly unreasonable as shown by the evidence of record, discretion is abused. An abuse of discretion is also made out where it appears from a review of the record that there is no evidence to support the court's findings or that there is a capricious disbelief of evidence.

**Id.** at 18-19 (quotation and citations omitted).

In addition, regarding the definition of an abuse of discretion, this

Court has stated:

> An abuse of discretion is not merely an error of judgment; if, in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either manifestly unreasonable or the product of partiality, prejudice, bias or ill will, discretion has been abused.

**Bulgarelli v. Bulgarelli**, 934 A.2d 107, 111 (Pa. Super. 2007) (quotation

marks omitted).

With any custody case decided under the Act, the paramount concern

is the best interests of the child. 23 Pa.C.S. §§ 5328, 5338. Section 5323

of the Act provides for the following types of custody awards:

> **(a) Types of award.**—After considering the factors set forth in section 5328 (relating to factors to consider when awarding custody), the court may award any of the following types of custody if it in the best interest of the child:
>
> (1) Shared physical custody.
>
> (2) Primary physical custody.

- 5 -

(3) Partial physical custody.

(4) Sole physical custody.

(5) Supervised physical custody.

(6) Shared legal custody.

(7) Sole legal custody.

23 Pa.C.S. § 5323(a)(1-7).

Section 5338 of the Act provides that, upon petition, a trial court may modify a custody order if it serves the best interests of the child. 23 Pa.C.S. § 5338. Section 5328(a) sets forth the best interest factors that the trial court must consider. *E.D. v. M.P.*, 33 A.3d 73, 80-81, n.2 (Pa. Super. 2011).

Section 5328 of the Act provides, in relevant part, as follows:

**§ 5328.  Factors to consider when awarding custody**

**(a) Factors.**—In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a)(1) and (2) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S. § 5328(a)(1-16). Trial courts are required to consider "**[a]ll** of the factors listed in section 5328(a) . . . when entering a custody order." *J.R.M. v. J.E.A.,* 33 A.3d 647, 652 (Pa. Super. 2011) (emphasis in original).

Where a request for relocation of the subject child along with a parent is involved, the trial court must consider the following ten relocation factors set forth within section 5337(h) of the Act:

**(h) Relocation factors.—**In determining whether to grant a proposed relocation, the court shall consider the following factors, giving weighted consideration to those factors which affect the safety of the child:

(1) The nature, quality, extent of involvement and duration of the child's relationship with the party proposing to relocate and with the nonrelocating party, siblings and other significant persons in the child's life.

(2) The age, developmental stage, needs of the child and the likely impact the relocation will have on the child's physical, educational and emotional development, taking into consideration any special needs of the child.

(3) The feasibility of preserving the relationship between the nonrelocating party and the child through suitable custody arrangements, considering the logistics and financial circumstances of the parties.

(4) The child's preference, taking into consideration the age and maturity of the child.

(5) Whether there is an established pattern of conduct of either party to promote or thwart the relationship of the child and the other party.

(6) Whether the relocation will enhance the general quality of life for the party seeking the relocation, including, but not limited to, financial or emotional benefit or educational opportunity.

(7) Whether the relocation will enhance the general quality of life for the child, including, but not limited to, financial or emotional benefit or educational opportunity.

(8) The reasons and motivation of each party for seeking or opposing the relocation.

(9) The present and past abuse committed by a party or member of the party's household and whether there is a continued risk of harm to the child or an abused party.

(10) Any other factor affecting the best interest of the child.

23 Pa.C.S. § 5337(h). **See E.D.**, 33 A.3d at 81-82 ("Section 5337(h) mandates that the trial court *shall* consider all of the factors listed therein, giving weighted consideration to those factors affecting the safety of the child.") **See also D.K. v. S.P.K.**, 102 A.3d 467, 477-478 (Pa. Super. 2014) (holding that trial court is to consider the section 5337(h) factors only where a parent is relocating with child). Moreover, "[w]hen a custody dispute involves a request by a party to relocate, we have explained 'there is no black letter formula that easily resolves relocation disputes; rather, custody disputes are delicate issues that must be handled on a case-by-case basis.'" **C.M.K. v. K.E.M.**, 45 A.3d 417, 421 (Pa. Super. 2012) (quoting **Baldwin v. Baldwin**, 710 A.2d 610, 614 (Pa. Super. 1998)).

Further, we have explained the following:

Section 5323(d) provides that a trial court "shall delineate the reasons for its decision on the record in open court or in a written opinion or order." 23 Pa.C.S.A. § 5323(d). Additionally, "section 5323(d) requires the trial court to set forth its mandatory assessment of the sixteen [Section 5328(a) custody] factors prior to the deadline by which a litigant must file a notice of appeal." *C.B. v. J.B.*, 65 A.3d 946, 955 (Pa. Super. 2013), *appeal denied*, 70 A.3d 808 (Pa. 2013). . . .

In expressing the reasons for its decision, "there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations." *M.J.M. v. M.L.G.*, 63 A.3d 331, 336 (Pa. Super. 2013), *appeal denied*, [620 Pa. 710], 68 A.3d 909 (2013). A court's explanation of reasons for its decision, which adequately addresses the relevant factors, complies with Section 5323(d). *Id*.

*A.V. v. S.T.*, 87 A.3d 818, 822-823 (Pa. Super. 2014).

Similarly, with regard to relocation, in *A.M.S. v. M.R.C.*, 70 A.3d 830 (Pa. Super. 2013), we stated the following:

[W]e conclude here that sections 5323(d) and 5328 require the trial court to set forth its *ratio decidendi* at or near the time it issues its decision in a custody proceeding. We have held that, because the best interests of the child are the paramount concern of any custody case, the trial court must address the sixteen best interest factors of section 5328(a) and the ten relocation factors of section 5337(h). *B.K.M. v. J.A.M.*, 2012 PA Super 156, 50 A.3d 168, 172-[1]75 (Pa. Super. 2012) (finding the trial court erred in failing to consider all section 5328(a) and section 5337(h) factors). Therefore, by logical necessity, today we emphasize that our holding in *C.B.* (*i.e.*, that section 5323(d) requires the trial court to delineate its reasoning at or near the time of its decision) extends to cases that involve both custody and relocation pursuant to section 5337.

*A.M.S.*, 70 A.3d at 835.

Additionally, in *A.M.S.*, we held that, with regard to relocation:

Section 5337(h) mandates that the trial court **shall** consider all of the factors listed therein, giving weighted consideration to

- 10 -

those factors affecting the safety of the child. In this case, it cannot be ascertained from the record on appeal whether the trial court considered all of the section 5337(h) factors in reaching its decision.

*A.M.S.*, 70 A.3d at 836 (citations omitted) (emphasis in original).

In his first issue, Father contends that the trial court abused its discretion by allowing Mother to relocate sixty-eight miles and one hour and fifteen minutes away from Father, from Coatesville, Pennsylvania, to Marlton, New Jersey, where Mother did not meet her burden of proof in demonstrating that it was in Child's best interest to do so. Father's Brief at 21. Father argues that the trial court failed to adequately consider all relevant factors, including the relocation factors listed in 23 Pa.C.S. §5337(h). *Id*. at 21, 27-39. In his brief, Father sets forth a discussion of each of the section 5337(h) factors, and he focuses on testimony that he believes supports the weighing of the factors in his favor. *Id*. at 27-39.

In rendering its decision on the record, which the trial court incorporated by reference into its opinion entered on September 30, 2016, the trial court properly discussed both the section 5328(a) best-interest factors and the section 5337(h) factors. At the conclusion of the hearing on May 23, 2016, the trial court, in considering section 5328(a)(1), focused on an incident in which Mother informed Father that Child was sick with croup on the day of his custodial exchange. N.T., 5/23/16, at 51-54, 118-122.

Despite Mother informing Father of Child's illness, Father appeared at Mother's house with his nephew, L.,[3] and attempted to gain custody of Child. *Id*. In relation to the incident, Father was charged under New Jersey law with a disorderly person offense and was scheduled to appear in a New Jersey criminal court. *Id*. at 54, 74, 118-122. The trial court stated the following:

> Which party is more likely to encourage and permit frequent and continuing contact between the child and another party. Well, I don't think there's any -- I have to take the circumstances as I currently find them, okay? There's no question that – I'm going to call you mom, if I may -- mom is making the child freely available. And the fact that the child was not available because she was sick doesn't mean that the child wasn't freely available.
>
> You know sometimes it really -- sometimes sick really is sick. And sometimes it really is better for a child just to stay put than to get schlepped three hours round trip because you think you can do as good a job caring for her with her croup as her mom can. In what universe is it good to pick her up and take her away out of the situation which she's trying to recuperate just so you can be super dad? Not.

N.T., 5/23/16, at 157-158.

Regarding section 5328(a)(2),[4] Father testified that Mother abuses prescription drugs, has mental health issues, and has injured herself while under the influence of drugs. N.T., 5/23/16, at 76-78. On cross-

---

[3] At the custody trial, Father testified that L. is thirteen years old. N.T., 5/23/16, at 21.

[4] While the trial court did not discuss section 5328(a)(2.1), the evidence does not support any finding with regard to that section.

- 12 -

examination, Mother's counsel questioned Father about an incident occurring on January 15, 2015. *Id.* at 54-62. Mother proffered photographs reflecting that they were taken on January 17, 2015. *Id.* at 58-62. The trial court admitted the photographs into evidence. *Id.* at 193-194. Mother alleged that Father physically and emotionally abused her while she resided with him and that she is frightened of him. *Id.* at 108-110, 123. Mother stated that the photographs, taken by the girlfriend of her neighbor's son, depicted Mother with bruises Father allegedly caused when he physically attacked Mother. *Id.* The girlfriend of the neighbor's son purportedly took the photographs two days after Mother allegedly sustained the injuries. *Id.* Mother asserted that Father has anger management issues. *Id.* at 106.

The trial court articulated:

The present and past abuse committed by either party or member of the party's household, whether there's a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child. Okay. There's a big question here about abuse. You know, it's night and day. I do hear that there -- I hear about some psychotropic drugs which could easily create a situation where someone doesn't remember what they're doing or acts irrationally. That's real possible. It's also real possible that [Father] has a wicked bad temper. Both things are possible. I'm not going to make a finding. There was no [Protection From Abuse order] filed, there was [sic] no trips to the [Emergency Room]. There was nothing other than some neighbor taking photographs [of bruises on Mother] two days later, which I'm only going to assume were taken two days later. And, you know, that doesn't tell me a whole lot. It only tells me a lot in the justification that mom has for why she was leaving; that she was afraid. That is her justification, and the pictures indicate something; either she was crazy high and injured herself in a

- 13 -

psychotic incident, or she got banged around by [Father]. Neither one is a good situation.

N.T., 5/23/16, at 158-159.

Regarding section 5328(a)(3), the trial court expressed:

The parental duties performed by each party on behalf of the child. Well, it's clear that during the relationship while it was intact, everybody had their jobs, and [Father] was the bread[-]winning parent and, therefore, he did less of a hands-on parenting during that time than [Mother] did. And [Mother] did them because she wasn't working, and that was her designated role, and many families fall into assigned roles. Makes sense. I take no -- you know, that doesn't tell me anything.

But it also tells me that, at least leading up to this point of separation, that in terms of hands-on care, that that was -- that fell more within [Mother's] purview than with [Father], not that you didn't do anything, but that that was how the jobs happened. I am really concerned, and, quite frankly, I just heard it in passing about the potty training. This child is four years old. She ought to be potty trained. Now maybe she regressed a little when the move took place. But, quite frankly, you better find out what [Mother's] doing to potty train this child, because you need to potty train this child.

And if she poops all over your house, tough you know what, because you've got to figure out how to do it and support as a couple whatever reasonable efforts there are to toilet train this child. I'm amazed that Goddard School will allow her to go there if she's not potty trained. Most kids are potty trained by the time they are two. I'm not talking to you, okay? You two need to get on the same page with regards to this. And it's harder when you're in two households. There will be some regression. But you need to be communicating about it and not talking to each other on text isn't an answer.

N.T., 5/23/16, at 159-161.

With regard to section 5328(a)(4), the trial court stated:

The need for stability and continuity in the child's education, family life and community life. Well, continuity pretty much

- 14 -

went out the window in November of 2015 [when Mother left the parties' residence with Child], okay? But she still has a relationship with her paternal side of the family. She still has a relationship with her maternal side of the family. It's just now in different degrees than it was before. She wasn't in school, now she is in school. She had an intact family, now she has a separated family. Those things are a given in a custody situation. So that really doesn't weigh on either person's side. I just want to say this: That, you know, you had absolutely no right to pick up and move without notice to him; none, zero. And the fact that you've been threatening to do it forever, doesn't even count. It's not even close to counting. You knew where you were going to be living on October 22nd, probably well before that, because it's in your custody complaint, which was filed on October 27th, three weeks before you actually moved out. So don't tell me you didn't know where you were going to be living. You waited until he wasn't there in order to pull everything out of the house and make a clean getaway where [Father] couldn't stop you. And you either did that because it was the easiest thing to do or because you were afraid of him. But the fact of the matter is, you have no right to do it without previous notice. Now, that water is over the dam. So I'm telling you, you had no right to do it. The question is whether I'm going to undo it, and we'll get to that.

N.T., 5/23/16, at 161-162.

Regarding section 5328(a)(5), the trial court specified:

The availability of extended family. Well it sounds like there's enough extended family to go around here, on both sides. Let me talk about family. I always find it somewhat hypocritical that one parent or the other picks up and moves so that they can be with their family. I want to be with my family. Hey, how about [Child's] family? He's part of [Child's] family. So you've chosen your mommy and daddy over [Child] being able to have her mommy and daddy. Who is the grown up, who is the child? I don't know.

N.T., 5/23/16, at 162-163.

With regard to section 5328(a)(6), the trial court indicated:

The child's sibling relationships. Well, I heard about – don't tell me, don't tell me – [N.], because he lives in Italy most of the time. It's clear he has a relationship. It's not the kind of relationship that I would characterize as a typical sibling relationship where you see them day in and day out, but it's clear [Child] has a relationship with him. Similarly, it sounds like [Father's nephew, L., and Father's nephew, G.], whoever.

[FATHER'S COUNSEL]: [A.]

THE COURT: Yeah, whoever. They are important, but they are not siblings.

N.T., 5/23/16, at 163.[5]

Regarding section 5328(a)(7), the trial court stated:

The well-reasoned preference of the child. We don't talk to four-years-olds in chambers, as much as I'd love to.

N.T., 5/23/16, at 163.

With regard to section 5328(a)(8), the trial court articulated:

Eight, the attempts of the parent to turn the child against the other parent. No evidence of that at all. What I'm seeing is normal stressed out parents wanting to have more time with their children, their child, but I'm not seeing efforts on the part of either of you to withhold her from the other or to make her wish that she didn't love you. And thank you for that.

N.T., 5/23/16, at 163-164.

Concerning section 5328(a)(9), the trial court stated:

_____

[5] N. is Father's twelve-year-old son from a prior relationship who lives in Italy, but spends some time in Father's home during the year. N.T., 5/3/16, at 22-24. Father testified that he also has two nephews who live nearby, L. and an older nephew, who is nineteen years-old. *Id*. at 21.

Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for her emotional needs.

I think you both are capable of that, in your unique and different ways. You are not the same people. And the way that you maintain a loving, stable, consistent and nurturing relationship with her is going to look different with mom than it does with dad.

N.T., 5/23/16, at 165-166.

With regard to section 5328(a)(10), which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child, the trial court expressed the following:

So what I will say, however, and it kind of looks back to the stability and continuity factor, I will note that historically, [Father's] work schedule has been one that would make his ability to serve as a primary custodian completely impossible. I mean -- and even in terms of having a really permanently defined weekend schedule would be hard, based on the travel. So that's why you arrived at things that you've arrived at because it tries to accommodate the maximum time that you have when [Father is] not traveling, which is a good thing. But I will say that you have to pay attention to the fact that because your parental duties kind of shifted along -- sort of fell into place because of [Father's] work schedule and because of [Mother's] not work schedule, that this is part of the status quo here, okay?

So I can't blame [Mother] for your work schedule, all right? That's on you. And it sounds like it's a great job and you're probably really, really good at it. And that doesn't mean that you are any less of a father for the time that you spend with your daughter; it's just not in the same kind of everyday work a day 9:00 to 5:00 -- well, all the 24/7 kind of situation because your job takes you away from home for a while. Now, that may and that may not change. And if it does, that's something that you all need to talk about. But if it does, then, also, I'm thinking to myself, you know, why are you living at home with your parents, you know, when you could, theoretically, move closer to Marlton. This is all hypothetical. So those things are, you know,

- 17 -

part of what could happen, logistics that could change in the event that your work schedule changes.

[FATHER'S COUNSEL]: I'm sorry to interrupt, [Father] doesn't live with his parents.

[FATHER]: I simply purchased their house, that's all.

THE COURT: Thank you for the correction.

N.T., 5/23/16, at 164-166.

Regarding section 5328(a)(11), the trial court stated:

The proximity of the residences of the party. Well, that's the big problem now. You know, 55, 60 miles, it's a long way. And we're talking about, it's one thing if you're driving 60 miles through Lancaster County; it's another thing if you're driving 60 miles through the greater Philadelphia region and over the bridges into New Jersey. It's just a whole different world. And so while your residences are, you know – it's not like the family that I have where the mom is living in Massachusetts and the father is living in Oxford. That's a whole nother [sic] problem. But it does make it hard to have the kind of hands-on parenting on a spontaneous or on a -- even a one-day-at-a-time basis because of the amount of travel involved. So that's a problem.

N.T., 5/23/16, at 166-167.

Concerning section 5328(a)(12), the trial court indicated the following:

Each party's availability to care for the child or ability to make appropriate child care arrangements. I haven't really heard a whole lot about appropriate child care arrangements other than Goddard School, and that's a 9:00 to 5:00 kind of thing. I haven't heard anything on [Father's] side, but he's got this extended family, so I'm assuming that, you know, those things would be taken care of.

N.T., 5/23/16, at 167.

With regard to section 5328(a)(13), the trial court stated:

The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. Well, okay, this is where things have started to fall apart. In her parting memo, [Mother] hoped that everybody could remain friendly and that they could keep their eye on the ball, which is [Child], and not devolve into ugliness. That hasn't really worked. I'm not sure why it hasn't worked, but I will say this: Just as [Mother] had absolutely no right to move without giving [Father] advanced notice under the law, [Father] had absolutely no right to show up at [Mother's] house unannounced, none. That was a bully move. There's no other way to interpret it. [Father] went there to intimidate [Mother]. And, what's worse, [Father] took a kid with [him], right? [L.] went with [Father].

[FATHER]: Can I say.

THE COURT: No. Unless he didn't go with you.

[FATHER]: He went with me.

THE COURT: All right, okay.

[FATHER]: And he had a teddy bear with him.

THE COURT: Wonderful. You still had absolutely no right to invade [Mother's] privacy -- no, I'm not talking to you. You may think that because your daughter was there you had a right to be there. The answer is, no, any more than [Mother] would have the right to come to [Father's] house unannounced in the middle of the night to check on you, okay? No right whatsoever.

Whatever happens with the cops and the civil -- the criminal thing, happens. But I'm telling you, you had no right to do that. And that created an entire legacy of distrust. So even if you had the right to be there and she asked you not to, and you came anyway, and the police were called, what kind of a thing is this for your daughter to see? This is no kind of a thing for your daughter to see. She should not be put in a position where you two are calling the cops on each other. And I'm gathering this isn't the first time. Who is grown up here? Is this the way you want your daughter to be raised, knowing that you can't solve things by talking them out; therefore, you just get State Troopers and New Jersey cops involved? Please. I'm not impressed with that kind of parenting. It is a blight on both of

- 19 -

your parenting. So I have for you some reading material. Steve, would you do me a favor, pass this out to both of them. This is a program which you will sign up for. It's called Our Family Wizard. And it has everything you need to keep the other informed about what's going on with your daughter, about communicating with each other. And all communications go through Our Family Wizard and they are date and time stamped. So if [Mother] texts you through Our Family Wizard and you don't get back to her, I'll know it, okay? If you mouth off and say something obscene, I will know it. If you don't respond to his e-mails, I will know it. If [Father] asks you to upload the medical information, which you should do anyway because they have components for that, and you don't, I will know it.

Now, that presumes that I want to even look at your Our Family Wizard account, which I don't, but I can. Utilize this program to communicate with each other. It is fabulous. It costs a hundred bucks a year a person and you'll stay out of each other's last nerve.

N.T., 5/23/16, at 167-170.

Regarding section 5328(a)(14), the history of drug or alcohol abuse of a party or a member of a party's household, Mother had been charged with possession of illegal drugs and had proceeded through the Drug Court program in Chester County twelve years prior to the custody trial. N.T., 5/23/16, at 92, 96. Mother stated that the drugs had belonged to her prior husband, a physician, and that she had taken the blame so that her former husband would not jeopardize his medical career. N.T., 5/23/16, at 92-97. Mother also testified about the prescription drugs that she uses. *Id*. The trial court expressed:

Well, if I believe [Father], you have some prescription drug issues. I agree with you that you don't have to have pled guilty to anything to go through Drug Court. It's a diversionary program, so the charges, not the conviction, but the charges are

expunged, assuming it was Chester County. Was it Chester County?

[MOTHER]: Yes.

THE COURT: But, nonetheless, I'm also hearing about these various things that you need to take for your sleep, and so on and so forth. And I'm going to assume that you are under a doctor's care and that you're having your meds monitored and checked. That's important.

I did think about sending you both downstairs to adult probation to be tested today, but I didn't because it's after hours. But I might do it again, you never know.

N.T., 5/23/16, at 170-171.

Concerning section 5328(a)(15), the trial court commented:

The mental and physical condition of a party or member of a party's household. All right, [Father] would say that you have psychiatric issues. [Mother] would say he has rage issues. In fairness to both of you, I believe about half of what each of you told me, and the other half I completely discount. That's actually a pretty good rate for what I hear in custody cases. I have to always take everything with a grain of salt and look at what people's motivations are. And I don't want you labeled as a drug abuser any more than I want you labeled as an abuser. So assuming that neither of you wants either of those things, either, you need to look to yourselves and make sure that your behavior doesn't give support to that accusation by the other person. That's really important. It's not just important for the two [of] you, it's important for [Child]. She deserves to know that mom's got her whits [sic] about her at all times. And even if you have some mental health issues, and there's no crime in that, that you're seeing to it. Similarly, everybody gets ticked off, but that you can address it in a constructive fashion is extremely important. And it's a lesson that you can teach your daughter, as well.

N.T., 5/23/16, at 171-172.

With regard to section 5328(a)(16), the trial court found as follows:

Any other relevant factor. I'm just going to go right to the relocation factors.

N.T., 5/23/16, at 173.

Concerning the section 5337(h)(1) relocation factor, the trial court

stated the following:

The nature, quality, extent of involvement and duration of the child's relationship with the party proposing to relocate and with a non-relocating party, siblings, and other significant person in the child's life.

There is no question that you both have an excellent relationship with [Child], that's a given. You both concede that. I think that, given the nature of your self-designed roles, that you were, at least until recently, the status quo I would say that [Mother] has borne the laboring oar in terms of day-to-day, hands on got to do what you got to do nurturing for this child. That does not mean that [Father is] not capable, willing, or able to do that, you are. You just haven't had the schedule to be that guy on the same basis that [Mother's] had the schedule to do.

So I would have to say that if I accept the relocation, and I'm inclined, at this point, to do it without -- enough water has gone under the dam at this point that to upset this applecart yet again could not possibly be in this child's best interest.

Because then I'm going to make [Mother] move back to Chester County, to an area where she doesn't have a job and where she doesn't have family and leave a lease that is already – she'll be in violation of, pull the child out of a school that she enjoys. *Am I saying that she gets a leg up because she did what she shouldn't have done in the first place? Not really. What I'm saying is this is the new now. And it does not appear to me to be so, so egregious that I can't help you be the dad you want to be in this relationship.*

N.T., 5/23/16, at 173-174 (emphasis added).

With regard to the section 5337(h)(2) relocation factor, the trial court

indicated:

- 22 -

Number two, the age, developmental, mental stage, needs of the child and likely impact the relocation will have on the child's physical, educational, and emotional development.

Clearly, and I'm quoting now from [Mother], that it was an adjustment, but that [Child is] adjusted really well and is now currently really happy. Does that mean that [Child] would be unhappy in Chester County? No, not at all. But to create another move, I'm not sure that that makes sense. And you have to understand that these factors are all presuming that the move hasn't yet occurred, not that the move had occurred.

N.T., 5/23/16, at 174-175.

Regarding the section 5337(h)(3) relocation factor, the trial court expressed the following:

The feasibility of preserving the relationship between the non-relocating party, that's dad, and the child, through suitable custody arrangements. Okay. That's the big one here, because [Father] wants to be able to have as much hands-on time with his daughter as possible, and I know that [Mother] is willing to make that happen. That's, as he pointed out, all well and good while she's not in school full time. Once she's in school full time, that is going to ramp back. However, we need to work with that, and I am wholly in favor of the informality of what you've done, which is to make the child available as she can, given the big chunks of time that you have that are sort of unscheduled time because of your variable work schedule.

Yes?

[MOTHER'S COUNSEL]: Your Honor, there is a signed custody order.

THE COURT: I know. But he gets his time -- well, it was a temporary order, right?

[MOTHER'S COUNSEL]: No. It was signed by all parties.

THE COURT: Okay. Then what the heck are we doing here?

[MOTHER'S COUNSEL]: The relocation.

- 23 -

THE COURT: Well, the order was signed after the relocation took place, eh?

[MOTHER'S COUNSEL]: Yes, your Honor. If I can just explain something?

THE COURT: Mm-hmm.

[MOTHER'S COUNSEL]: Your Honor, all parties signed the custody order back –

THE COURT: January.

[MOTHER'S COUNSEL]: -- in January. It got submitted to the Court in January. I was the one that submitted it to the Court. We kept waiting for the Judge to sign off on it. A couple weeks ago I spoke to counsel, he said, I haven't heard from the Court yet either. I came down to the courthouse and tried to track down where the -- what happened to it. I went upstairs -- I guess downstairs to the fifth floor, they couldn't find it. I then went to the Prothonotary; they pulled out what they had. They have my letter and they have copies of the signed custody by all parties, but they didn't have the original one. So they said they don't send it to the Judge unless they have original signatures. That's where it's been.

THE COURT: Okay. Yeah?

[FATHER'S COUNSEL]: Your Honor, there is no signed custody order by a Judge. And the only reason the agreement was made was while this was pending we couldn't just have no agreement.

THE COURT: Okay. So, on the one hand, you say it's not a temporary agreement; on the other hand, you're saying it is. I'm deciding it anyway, so let's go with it.

[MOTHER'S COUNSEL]: Thank you, your Honor.

THE COURT: I appreciate that you were able to work out something in the interim, which pays attention to the fact that [Father] has a work schedule that isn't going to permit him to have the exact same days every single day of the month. And until that changes, and unless that changes, it doesn't make

- 24 -

sense for me to try and create a custody arrangement where I bring [Mother] back to Chester County to try and accommodate [Father's] schedule, which is, you know, variable. It makes sense to allow the child to put some roots down where she can at least stay in her school. Does that mean that [Child] has to see out the rest of her academic life in Evesham Township, New Jersey? No. Maybe [Mother] will decide, at some point, maybe she'll get a job that's not far from her parents but closer to here. Things can happen in the next year-and-a-half before [Child has] got to go to public school. So I don't want to guesstimate as to what's going to happen. Again, and I just threw this out as one of the infinite number of possibilities, [Father] could decide that if he's got this job that keeps him around home, that he can find a place to live that's a little closer that lets him take advantage of that time much more, without having to have quite the commute.

All of those things are possibilities that are out there in the air. I don't know what's going to happen in two years. It is true that the Unionville Chadds Ford School District is the best in Chester County. No question. Hands down. Probably if not the best, one of the very, very best in all of Pennsylvania. I don't know that about Evesham Township. But never in my life have I denied a relocation on the basis of schools. Schools are only as good as the parents who send their children there. If you have a school that has involved parents and good teachers, even if it's 250th in the state and not second in the state, your child can blossom and be an outstanding student. And we see brilliant students going to Ivy League schools from some of the worst schools in Coatesville, all due respect to Coatesville, and that's because their parents are involved and they had some wonderful teachers. So I've never denied a move on account of schools. I'll come back to three again.

N.T., 5/23/16, at 175-179.

Concerning the section 5337(h)(4) relocation factor, the trial court

commented as follows:

The child's preference. Taking into consideration I didn't interview the child, she's too young.

N.T., 5/23/16, at 180.

Regarding the section 5337(h)(5) relocation factor, the trial court

stated:

> Whether there's an established pattern of conduct of either party to promote or thwart the relationship. I already covered that in the main factors.

N.T., 5/23/16, at 180.

With regard to the section 5337(h)(6) factor, the trial court specified

the following:

> Whether the relocation will enhance the general quality of life for the parties seeking the relocation, including, but not limited to, financial or emotional benefit or educational opportunity.
>
> Clearly, the move was made without any financial benefit to [Mother]. The benefit to her is the emotional benefit of being closer to her parents. Because I said I always weigh that with understanding that [Mother] gets to be with her mommy and daddy, and [Child] doesn't; [Child] gets to be with [Mother], but not with [Father]. On the other hand, the law has long recognized a certain trickle-down theory that if there are opportunities, and in this case it's not financial, if there are emotional opportunities that make for a more stable and calm life and a more easy ability to take care of the child on a day-to-day basis, that that is an emotional advantage that gets passed to the child.

N.T., 5/23/16, at 180-181.

Concerning the section 5337(h)(7) relocation factor, the trial court

stated:

> Whether the relocation will enhance the general quality of life for the child including, but not limited to, financial, emotional benefit or educational. I can't say that this move enhances [Child's] life one way or the other. I think it's really a neutral factor.

N.T., 5/23/16, at 181.

With regard to the section 5337(h)(8) relocation factor, the trial court commented as follows:

> The reasons and motivation of each party for seeking or opposing the relocation.
>
> [Mother] testified she was motivated to move because she was tired of being afraid. [Father] opposes the move because he wants to be a real dad and not just some kind of a fantasy figure who is told when he's, and these are your words, allowed to see his daughter. So the first thing we got to do is get past the rhetoric and understand that [Father] is more than allowed, he is a co-parent, and that everything that happens should be as a co-parent.
>
> I liked what I heard from you, [Mother], when you said, when it came to schools that of course [Father] was going to be part of the decision-making in terms of which school [Child] would go to, if she stays -- even if she stays in New Jersey. And that's the kind of thinking I want, okay? But since I have made the decision that I'm not going to make you move back to Chester County with the child, we need to make sure that how he parents is as much parenting as he can do, given what his work schedule is without being disruptive to the child. And that's a fine balance, okay? Because parenting is not about being fair, okay? I have a lot of parents who say to me, I want 50/50 because that's what's fair. Fair is a four-letter word. I don't care about fair. Fair is irrelevant to me. Because that's a parent thing. I'm thinking about the child; what works for her. And, clearly, to have the maximum contact with [Father] that she can, while she can, and then, when she's in school, to figure out the arrangement that works most comfortably so that she maintains a wonderful relationship with [Father] and no matter what happens it's not just going to be just at Christmas and six weeks in the summer. Fear not. You will not be replicating [N.'s] situation with [Child]. That will not happen. It may well be that the two of you agree that during the school year it makes more sense for [Child] to, once she's in school, school to, you know, come home Sunday night so that she can get on the school bus in the morning. But then in the summers, if you have all these weeks and if you have an ability to stockpile them at all, to have her overlap with her brother, awesome. Awesome. And, quite frankly, from the standpoint of a working mom, to

- 27 -

know that your child's needs are taken care of during the summer, it's a huge financial and emotional burden off your shoulders. So I think you can work that out.

N.T., 5/23/16, at 181-183.

Regarding the section 5337(h)(9) relocation factor, the trial court remarked:

Past and present abuse. We talked about that.

N.T., 5/23/16, at 184.

Concerning the section 5337(h)(10) factor, the trial court stated the following:

And, any other factor. I didn't see any other factors. So smoking. Thank you for giving it up. Do not start again.

[MOTHER]: I won't.

THE COURT: And in any court order that I'm going to enter it's going to say no adult smokes around that child. Not just [Mother]; no relatives smoke around the child. If she's had croup -- and croup is really, really scary. It's not all that dangerous, but it's really, really scary. If she's had croup, she may have susceptibility to respiratory things, in which case none of us needs to have you smoking or even get secondhand smoke anywhere near her.

All right. You have the order that you entered while this matter was pending. I don't know if you need it tweaked now, in light of my decision that I'm not going to require the child to move back. If you do, I would like you to submit them to me. That's all.

N.T., 5/23/16, at 183-184.

In its Pa.R.A.P. 1925(a) opinion, the trial court observed the following in addressing Father's contention that the trial court failed to consider the best interest and relocation factors.

> Without repeating every consideration here, upon weighing the factors, I concluded that it was not in [Child's] best interest to move back to Chester County where Mother does not have a job, family or housing (N.T. at 174). Additionally, I stated that Father's work schedule did not permit him to be in Chester County every single day of the month. "And until that changes, and unless that changes, it doesn't make sense for me to try and create a custody arrangement where I bring Mom back to Chester County to try and accommodate his schedule, which is, you know, variable. It makes sense to allow the child to put some roots down where she can at least stay in her school." (N.T. at 178).

Trial Court Opinion, 9/30/16, at 5.

After our careful review of the record, we find competent evidence to support the trial court's factual findings with regard to the section 5328(a) best interests and section 5337(h) relocation factors. The instant case is factually distinguishable from **C.M.K.**, upon which Father relies in his brief. Father's Brief at 29. In **C.M.K.**, the trial court determined that the mother's relocation with the child would have an impact on the father's involvement in the child's life. On appeal, we concluded that the trial court did not err in finding that the mother failed to satisfy her burden of proving that her relocation with the child, along with modification of the parties' custody arrangement, would be in the best interests of the child. **C.M.K.**, 45 A.3d at 429. Here, we find that the trial court has not made an error of law, and its

conclusions are not unreasonable in light of the sustainable findings of the trial court. *C.R.F.*, 45 A.3d at 443.

Next, we address Father's argument that Mother failed to provide notice of her relocation with Child and that the trial court should have afforded more weight to that consideration. Section 5337(c), which addresses the notice the party proposing relocation must provide to the nonrelocating party, states, in pertinent part, as follows:

> (1) The party proposing the relocation shall notify every other individual who has custody rights to the child.
>
> (2) Notice, sent by certified mail, return receipt requested, shall be given no later than:
>
>> (i) the 60th day before the date of the proposed relocation; or
>>
>> (ii) the tenth day after the date that the individual knows of the relocation, if:
>>
>>> (A) the individual did not know and could not reasonably have known of the relocation in sufficient time to comply with the 60-day notice; and
>>>
>>> (B) it is not reasonably possible to delay the date of relocation so as to comply with the 60-day notice.

*D.K.*, 102 A.3d at 472 (citing 23 Pa.C.S. § 5337(c)).

Section 5337(i) provides that the "party proposing the relocation has the burden of establishing that the relocation will serve the best interest of the child as shown under the factors set forth in subsection (h)," and that each party "has the burden of establishing the integrity of that party's

motives in either seeking relocation or seeking to prevent the relocation." 23 Pa.C.S. § 5337(i).  Finally, section 5337(j) provides that the trial court may consider a failure to provide reasonable notice of a proposed relocation as:  (1) a factor in making a determination regarding the relocation; (2) a factor in determining whether custody rights should be modified; (3) a basis for ordering the return of the child to the nonrelocating party if the relocation has occurred without reasonable notice; (4) sufficient cause to order the party proposing the relocation to pay reasonable expenses and counsel fees incurred by the party objecting to the relocation; and (5) a ground for contempt and the imposition of sanctions against the party proposing the relocation.  23 Pa.C.S. § 5337(j).  Moreover, "[i]f a party relocates prior to a full expedited hearing, the court shall not confer any presumption in favor of the relocation."  23 Pa.C.S. § 5337(l).

Rule 1915.17 of the Pennsylvania Rule of Civil Procedure provides, in pertinent part, as follows:

> **(a)** A party proposing to change the residence of a child which significantly impairs the ability of a non-relocating party to exercise custodial rights must notify every other person who has custodial rights to the child and provide a counter-affidavit by which a person may agree or object.  The form of the notice and counter-affidavit are set forth in subdivisions (i) and (j) below. The notice shall be sent by certified mail, return receipt requested, addressee only or pursuant to Pa.R.C.P. No. 1930.4, no later than the sixtieth day before the date of the proposed change of residence or other time frame set forth in 23 Pa.C.S. § 5337(c)(2).
>
> **(b)** If the other party objects to the proposed change in the child's residence, that party must serve the counter-affidavit on

the party proposing the change by certified mail, return receipt requested, addressee only, or pursuant to Pa.R.C.P. No. 1930.4 within 30 days of receipt of the notice required in subdivision (a) above. If there is an existing child custody case, the objecting party also shall file the counter-affidavit with the court.

**(c)** If no objection to a proposed change of a child's residence is timely served after notice, the proposing party may change the residence of the child and such shall not be considered a "relocate on" under statute or rule.

**(d)** The procedure in any relocation case shall be expedited. There shall be no requirement for parenting education or mediation prior to an expedited hearing before a judge.

**(e)** If the party proposing the relocation seeks an order of court, has served a notice of proposed relocation as required by 23 Pa.C.S. § 5337, has not received notice of objection to the move and seeks confirmation of relocation, the party proposing the relocation shall file:

**(1)** a complaint for custody and petition to confirm relocation, when no custody case exists, or

**(2)** a petition to confirm relocation when there is an existing custody case and

**(3)** a proposed order including the information set forth at 23 Pa.C.S. § 5337(c)(3).

**(f)** If the party proposing the relocation has received notice of objection to the proposed move after serving a notice of proposed relocation as required by 23 Pa.C.S. § 5337 et seq., the party proposing relocation shall file:

**(1)** a complaint for custody or petition for modification, as applicable;

**(2)** a copy of the notice of proposed relocation served on the non-relocating party;

**(3)** a copy of the counter-affidavit indicating objection to relocation; and

**(4)** a request for a hearing.

**(g)** If the non-relocating party has been served with a notice of proposed relocation and the party proposing relocation has not complied with subdivision (f) above, the non-relocating party may file:

**(1)** a complaint for custody or petition for modification, as applicable;

**(2)** a counter-affidavit as set forth in 23 Pa.C.S. § 5337(d)(1), and

**(3)** a request for a hearing.

**(h)** If a non-relocating party has not been served with a notice of proposed relocation and seeks an order of court preventing relocation, the non-relocating party shall file:

**(1)** a complaint for custody or petition for modification, as applicable;

**(2)** a statement of objection to relocation; and

**(3)** a request for a hearing.

Pa.R.C.P. 1915.17.

With regard to the notice of relocation issue, the trial court stated the

following:

Father asserts that I erred in permitting relocation when Mother failed to provide advance notice of relocation to Father and failed to file a counter-affidavit pursuant to Pa.R.C.P. 1915.17. Father claims that Mother failed to provide notice of relocation, which is considered a statutory factor against relocation and a statutory basis to return the child to Father.

While it is true that Mother failed to file a notice of intent to relocate as required by 23 Pa.C.S.A. §5337(c) and Rule 1915.17, Mother's failure to provide reasonable notice of relocation was not fatal to a grant of her request to move.

Pursuant to 23 Pa.C.S.A. §5337(j), the court may consider a failure to provide reasonable notice of a proposed relocation as:

(1) a factor in making a determination regarding the relocation;

(2) a factor in determining whether custody rights should be modified;

(3) a basis for ordering the return of the child to the nonrelocating party if the relocation has occurred without reasonable notice;

(4) sufficient cause to order the party proposing the relocation to pay reasonable expenses. and counsel fees incurred by the party objecting to the relocation; and

(5) a ground for contempt and the imposition of sanctions against the party proposing the relocation.

At the beginning of the May 23, 2016 hearing, Father's counsel addressed the failure to file a notice of relocation. I considered the failure to provide reasonable notice along with all of the factors in Section 5337(h) and found that, despite Mother's failure to provide the required notice, relocation to New Jersey was in the best interest of [Child]. *See B.K.M. v. J.A.M.*, 50 A.3d 168, 175 (Pa. Super. 2012) (trial court was required to consider evidence arising after mother relocated to Sweden with the children. Trial court must apply the same consideration of the best interests of the child, and impose the same allocation of burdens, even where a relocation occurs prior to a full expedited hearing).

Trial Court Opinion, 9/30/16, at 5-6 (footnotes omitted).

After our careful review of the record, we find competent evidence to support the trial court's factual findings and conclusions of law. The trial court appropriately relied on *B.K.M.* and 23 Pa.C.S. §5337(j), in determining the amount of weight to give the fact that Mother relocated with Child without first affording Father notice. We find that the trial court has not

made an error of law, and its conclusions are not unreasonable in light of the sustainable findings of the trial court regarding Child's best interests. *C.R.F.*, 45 A.3d at 443. Thus, we will not disturb the trial court's credibility and weight determinations.

Next, Father argues that the trial court erred in applying a presumption regarding relocation, since Mother had moved to New Jersey with Child prior to the custody trial. Father asserts that the court indicated its primary reason for allowing relocation was the passage of time because the trial court did not want to force Child to move back to Chester County. Father's Brief at 21, 27.

The trial court addressed the presumption issue as follows:

> Father contends that I granted a presumption in favor of Mother since relocation had already occurred and the Court did not wish to see [Child] move again, despite the language of 23 Pa.C.S.A. 5337(l), which states that no presumption is to be made in favor of the relocating party, if relocation has already occurred at the time of the hearing.

> Deciding that it was in [Child's] best interest for Mother and [Child] to reside in New Jersey is not the same as granting a presumption in favor of Mother since relocation had already occurred. The evidence showed that Father's work schedule does not permit him to serve as the primary caregiver. Father travels for his employment. He is often gone from Monday morning to Friday afternoon (N.T. at 40). Sometimes he is away up to ten days or two weeks (N.T. at 41). Mother testified: "He left on Monday morning at 5:00 a.m. and sometimes he came home on Friday evenings and sometimes he stayed the weekend and came home the following Friday. . . I mean, it was hard, but he was always gone." (N.T. at 102-103).

> I considered Mother's reasons for moving to New Jersey, including her testimony that Father has an extremely bad

temper and hit her several times. (N.T. at 106). Father denied that he ever physically attacked Mother or threatened her. (N.T. at 56, 146-147). I credit Mother's testimony that she was afraid that Father could not control his anger. "I'm scared of him. I think he has no control of his temper. . . I feel a lot safer in New Jersey. I have - job prospects for me are better. The freedom of not living the way I was living in fear all the time makes me a much better mother, much more focused on what I should be focused on, which is my daughter." (N.T. at 123).

It was within my discretion to credit Mother's testimony. In custody cases, the Pennsylvania Superior Court defers to the findings of the trial judge on issues of credibility and weight of the evidence, since the trial judge had the opportunity to observe the proceedings and demeanor of the witnesses. *K.T. v. L.S.*, 118 A.3d 1136, 1159 (Pa. Super. 2015); *M.J.M. v. M.L.G.*, 63 A.3d 331, 334 (Pa. Super. 2013).

After considering all of the evidence, I found that relocating from Pennsylvania to New Jersey was in [Child's] best interest.

Trial Court Opinion, 9/30/16, at 6-8.

The trial court specifically stated that it did not afford any presumption to Mother based upon her relocation with Child prior to the custody hearing. Rather, the court considered the testimony, finding Mother's testimony regarding her move to be credible. The trial court weighed the evidence with regard to each of the factors enumerated in section 5328(a) and 5337(h), both as to Child's life with Father in Pennsylvania and with Mother in New Jersey, and it concluded that the move was in Child's best interests. The trial court clearly was aware of section 5337(l) at the time that it rendered its determination on May 23, 2016. N.T., 5/23/16, at 173-174. After our careful review of the record, we find competent evidence to

support the trial court's factual findings. We discern that the trial court has not made an error of law, and its conclusions are not unreasonable in light of the sustainable findings of the trial court. **C.R.F.**, 45 A.3d at 443.

Finally, we address Father's allegation that Mother had no valid reason supporting her relocation with Child, and that the relocation reduced the amount of time Father and his family may spend with Child. With regard to this claim, the trial court reasoned as follows:

> Father asserts that I erred in permitting relocation despite Mother providing no good reason in support of relocation, and where relocation serves to lessen and impede [Child's] time with Father and Father's family. Mother stated that her parents, sister, brother-in-law, niece and nephew live in New Jersey (N.T. at 89). Mother stated that when the parties were together, Father did not like her traveling to New Jersey with [Child] to visit her family. "[H]e tried to put a wedge between me and my family many, many times." (N.T. at 115).
>
> I found that Mother will receive an emotional benefit and enhanced quality of life by being closer to her family in New Jersey (N.T. at 180).
>
> Additionally, there was no credible evidence that Father's existing custodial rights will be impacted. Father has partial physical custody every other weekend from Friday to Monday. Father stated that Mother never prevented him from having contact with [Child] whenever he had free time (N.T. at 49). Mother also brought [Child] to Father's parents' house (N.T. at 50). Father has seen [Child] on every weekend of his custodial times except for the one weekend when she was sick (N.T. at 127). I considered Father's concern that his physical time with [Child] will be reduced once she starts school (N.T. at 32). "Basically, any way you slice it, her being that far from me, and I know this because of my son[6], it's going to drive a wedge between me and her. She's going to have resentment, and it's really going to limit my fatherhood." (N.T. at 34). [Child] is only four years old; she is not yet kindergarten age, so school is not yet an issue. I found that Mother has been making [Child]

available to Father for his custodial periods and there is no evidence she would discourage, frequent contact in the future (N.T. at 157).

[6] Father has a 12-year-old son who lives in Italy (N.T. 5/23/16 at 22-23).

Based on the foregoing, the Order of August 19, 2016 permitting Mother to relocate with the parties' minor child from Pennsylvania to New Jersey was the proper relief in this matter and amply supported by the evidence.

Trial Court Opinion, 9/30/16, at 8-9 (footnote in original).

After our careful review of the record, we find competent evidence to support the trial court's factual findings regarding Mother's reasons for relocating with Child to New Jersey, and the impact of the move on the amount of time that Child may spend with Father and his family. Father relies on **S.J.S. v. M.J.S.**, 76 A.3d 54 (Pa. Super. 2013), wherein the trial court denied the mother's request for relocation with the parties' two children from Erie, Pennsylvania, to Buckingham, Pennsylvania, in Bucks County. Father's Brief at 32. This Court, in **S.J.S.**, stated that the cost and logistics of the father maintaining contact with his daughters from across the state would weigh against relocation unless other factors militated strongly in favor of relocation. We agreed with the trial court that the children were doing well in school and in their activities; they had a strong bond with their father and their extended families in Erie; and the mother's employment prospects in Buckingham were nebulous at best. The trial court found, and this Court agreed, that the mother's motives for moving did not appear to be

driven by her children's best interests. *S.J.S.*, 76 A.3d at 554. *Cf. C.M.K.*, 45 A.3d at 429 (in which the trial court determined that the mother's relocation with the child would have an impact on the father's involvement in the child's life). In the present case, we find that the trial court has not made an error of law, and its conclusions are not unreasonable in light of the sustainable findings of the trial court. *C.R.F.*, 45 A.3d at 443. Accordingly, we affirm the order of the trial court.

Order affirmed.

Judge Platt joins the Memorandum.

Judge Solano concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/31/2017