A.M.S., Appellee

v.

M.R.C., Appellant.

Superior Court of Pennsylvania.

Argued Dec. 5, 2012.

Filed June 28, 2013.

Allan J. Ray, Pottstown, for appellant.

BEFORE: BOWES, J., OLSON, J., and WECHT, J.

OPINION BY WECHT, J.:

This appeal requires us to identify the juncture in a custody relocation case at which a trial court must specify the reasons for its decision. We address this question under the current child custody law, which took effect in January 2011, as well as in the light shed by our recent decision in *C.B. v. J.B. and M.B. and T.B.*, 2013 Pa.Super. 92, 65 A.3d 946.

In this case, M.R.C. ["Father"] appeals from the trial court's August 6, 2012 order granting A.M.S. ["Mother"]'s request to relocate with the parties' child, B.M.C.

["Child"] from Berks County, Pennsylvania to Palmyra, New York. We vacate the order and remand for further proceedings.

Father and Mother began dating in April 2009. Mother became pregnant, and the parties moved in together. Child was born in February 2010. In May 2011, Father moved out of the parties' shared residence. Mother's extended family lives in Palmyra, New York, while Mother's sister, mother, and father live or lived in Berks County. However, Mother's sister died while Mother was pregnant with Child, and Mother's mother died three months after Child was born. Mother's parents were divorced, and Mother is not close with her father. Trial Court Opinion ["T.C.O."], 8/30/12, at 2–3.

Mother filed a petition for custody in May 2012, and then filed a notice of proposed relocation. Father filed a custody complaint and a counter-affidavit opposing relocation. On July 17, 2012, the court conducted a hearing. Prior to the hearing, the parties' lawyers represented to the court that, once the court rendered a decision on relocation, the parties would be able to agree on a custody schedule. T.C.O. at 1. At the conclusion of the hearing, the court granted Mother's relocation request and asked the parties to submit proposed custody schedules. Notes of Testimony ["N.T."], 7/17/12, at 68. After the hearing, Father fired his counsel. T.C.O. at 1.

On August 6, 2012, the court issued an order affirming its grant of permission to relocate and outlining a custody schedule. The court awarded Mother primary custody, and granted Father partial custody as follows: the first week of every month; every December 26 through January 1; and other holidays if Father travels to Palmyra. Order, 8/6/12, at ¶¶ 3–5.

On August 14, 2012, Father, through new counsel, appealed the court's August 6, 2012 order. Father filed his concise statement of errors complained of on appeal with his notice of appeal, as required by Pa.R.A.P. 1925(a)(2)(i).[1]

Father presents the following issues on appeal:

  a.  Does the trial court's Opinion in Support of Order pursuant to Rule of Appellate Procedure 1925, which is only required once a notice of appeal has been filed, fail to suffice as a reason for the award "on the record in open court or in a written opinion or order" as mandated by 23 Pa. Con. Stat. Ann. § 5323 (2012) and fail as consideration of the relocation and custody factors? [2]

  b.  Did the trial court err as a matter of law and abuse its discretion when it failed to consider the factors of 23 Pa. Con. Stat. Ann. § 5337(h) when entering an order permitting relocation?

  c.  Did the trial court err as a matter of law and abuse its discretion when it failed to consider the factors of 23 Pa. Con. Stat. Ann. § 5328 when entering an order awarding child custody?

  d.  Did the trial court abuse its discretion in permitting [Mother]'s relocation in light of the factors of 23 Pa. Con. Stat. Ann § 5337(h)?

---

1. For financial reasons, Mother did not participate in the appeal, did not file a brief, and did not appear at argument. Letter from Mother's Counsel, 10/15/12.

2. We observe that Father's concise statement pursuant to Rule 1925 did not explicitly reference section 5323. However, Father's first listed issue is fairly and adequately suggested in that concise statement, which specifically asserts that the trial court erred by not articulating its reasoning. Concise Statement, 8/14/12, at ¶¶ 2(a), 2(c).

e. Did the trial court abuse its discretion by awarding [Mother] primary physical custody in light of the factors of 23 Pa. Con. Stat. Ann. § 5328(a)?

Father's Brief at 7.

Father's first issue raises the question of the point in time at which a trial court is required to delineate its reasons for a custody decision. Father asks us to interpret the statute so as to determine what constitutes compliance by the trial court. In such a case, our standard of review is well-settled:

> [T]he interpretation and application of a statute is a question of law that compels plenary review to determine whether the court committed an error of law. As with all questions of law, the appellate standard of review is *de novo* and the appellate scope of review is plenary.

*In re Adoption of J.A.S.*, 939 A.2d 403, 405 (Pa.Super.2007) (internal citations omitted).

■ In interpreting a statute:

[We] are constrained by the rules of statutory interpretation, particularly as found in the Statutory Construction Act. 1 Pa.C.S.A. §§ 1501–1991. The goal in interpreting any statute is to ascertain and effectuate the intention of the General Assembly. Our Supreme Court has stated that the plain language of a statute is in general the best indication of the legislative intent that gave rise to the statute. When the language is clear, explicit, and free from any ambiguity, we discern intent from the language alone, and not from the arguments based on legislative history or "spirit" of the statute. We must construe words and phrases in the statute according to their common and approved usage. We also must construe a statute in such a way as to give effect to all its provisions,

if possible, thereby avoiding the need to label any provision as mere surplusage. Under Section 1921(c), the court resorts to considerations of "purpose" and "object" of the legislature when the words of a statute are not explicit.... Finally, it is presumed that the legislature did not intend an absurd or unreasonable result. In this regard, we ... are permitted to examine the practical consequences of a particular interpretation.

*In re Adoption of J.A.S.*, 939 A.2d at 405–06 (internal citations, brackets and parentheticals omitted). We also "presume that the General Assembly is familiar with extant law when enacting legislation." *White v. Conestoga Title Ins. Co.*, 53 A.3d 720, 731 (Pa.2012).

We recently addressed this issue in *C.B. v. J.B. and M.B. and T.B.*, 2013 Pa.Super. 92, 65 A.3d 946. Concerning Section 5323's language, we observed the following:

Section 5323 mandates that, when the trial court awards custody, it "shall delineate the reasons for its decision **on the record in open court or in a written opinion or order.**" *Id.* § 5323(d) (emphasis added).

The statute does not specify the point in time at which the court must comply with this requirement. Prior to the enactment of this provision as part of the Act, there was no requirement that a trial court give any reason for its custody decision, subject only to the caveat that the court was obliged to provide a comprehensive opinion in the event of an appeal, in order to enable adequate review. *Coble v. Coble*, 323 Pa.Super. 445, 470 A.2d 1002, 1004 (1984).

In its most common usage, a written opinion refers to the Pa.R.A.P. 1925(a) opinion that the trial court produces in response to a notice of appeal. The rule dovetails with the longstanding require-

ment that the trial court prepare an opinion in the event of an appeal. *See Coble, supra.*

C.B., at 951–52.

In *C.B.*, we were required to interpret the statute. We stated:

> However, the enactment of section 5323(d) would not have been necessary simply to perpetuate or maintain this preexisting requirement. The use of "shall" means that the trial court must "delineate the reasons for its decision." To hold that the trial court may withhold its reasoning unless and until it issues a Rule 1925(a) opinion would be to flout the legislative will. First, under such an interpretation, a trial court might delay in explaining the basis for its ruling for as long as it retains jurisdiction, potentially until after the expiration of a litigant's time to appeal the custody ruling. We must perforce construe the statute in a way that accounts for this contingency. Second, such an interpretation would mean that a trial court might never delineate its reasons; inasmuch as most custody decisions are not appealed, many custody cases necessarily would entail judicial violation of the Act. The trial court could defer explaining its rationale until an appeal, if any, required the court to give the reasons for its decision. This would guarantee that, in many cases, the trial court would never comply with the statute. If no appeal were filed, the court would not need to file an opinion, and its reasoning would never be stated or known. This interpretation would render the mandatory language of § 5323(d) meaningless. It would nullify the statute or render its language mere surplusage. Plainly, this result is not what was intended by the General Assembly. We cannot ignore the mandatory language codified in the Act.

"Our goal in statutory interpretation is to 'ascertain and effectuate the intention of the General Assembly,' and we strive to give effect to all the provisions in a statute." *Kmonk–Sullivan v. State Farm Mut. Auto. Ins. Co.,* 746 A.2d 1118, 1121 (Pa.Super.1999) (citing 1 Pa. C.S. § 1921(a)). "In so doing, we must begin with a presumption that our legislature did not intend any statutory language to exist as mere surplusage. Accordingly, whenever possible, courts must construe a statute so as to give effect to every word contained therein." *Wiernik v. PHH U.S. Mortg. Corp.,* 736 A.2d 616, 621–22 (Pa.Super.1999); *see Commonwealth v. Bailey,* 986 A.2d 860, 863 (Pa.Super.2009) ("In interpreting a statute, we are to give effect to all the language of the statute and we may not render any language superfluous or assume language to be mere surplusage."). To interpret section 5323(d) so as to permit a trial court to forego addressing the factors until it issues its Pa.R.A.P. 1925(a) opinion—*i.e.* after a party has filed an appeal and a concise statement—renders that section's language mere surplusage. Under such an interpretation, if a party decides not to appeal the custody order, and the trial court does not address the factors contemporaneously with the custody order, the court may never address the factors. However, the Act's language requiring the trial court to do so is clear and unequivocal. *See* 23 Pa.C.S. §§ 5328 ("[T]he court *shall* determine the best interest of the child by considering all relevant factors ...") (emphasis added); 5323(d) (The court "*shall* then delineate the reasons for its decision on the record in open court or in a written opinion or order.") (emphasis added). Such an interpretation would all but guarantee that, in many cases, compliance with the Act would never occur. This result

clearly is not what the General Assembly intended in promulgating the new Act, because it would render the mandatory language in ... section 5323 meaningless.

*Id.* at 952–53.

We noted that our interpretation of the legislative will squares with the realities that confront custody litigants:

> While the failure of a trial court to comply with the Act in such circumstances may not have immediate consequences if no party files an appeal, future litigation could be compromised. Even if neither party appeals, a lack of explanation from the trial court at or near the time of the ruling can be harmful. As the best interests of children are mutable, custody matters often are continuous and ongoing, or at least episodic. If the court does not articulate its reasoning, a litigant seeking modification of a custody order in the future would not know what factors the trial court relied upon in fashioning that order. The litigant would not know what behaviors or circumstances could be changed in order to improve the chances of a different custody outcome and in order to maximize the child's best interests, as those interests might be perceived by the trial court.

*Id.* at 953.

*C.B.* also outlined the problems with a contrary interpretation:

> Once the decision to appeal has been made, if the trial court has not yet revealed its reasoning, the parties face the equally challenging task of filing a Pa. R.A.P. 1925(b) statement of errors complained of on appeal without any insight whatsoever into the trial court's ruling. This puts a losing party between the proverbial rock and hard place. As noted, lawyers would be in the untenable position of attempting to advise clients whether to make the financial and emotional commitment to pursue an appeal without adequate information upon which to base that advice. The parties typically submit a substantial amount of information to the trial court, including testimony from the parties and experts. An appealing party is left to guess as to which information the trial court found pertinent, and how the evidence informed the court's analysis of the Act's sixteen custody factors. After engaging in such speculation, the party must then take that information and develop concisely stated issues for appellate review in the 1925(b) statement. By rule, such issues must be stated with particularity, and anything that the party does not include in the statement is waived. *See Klos v. Klos,* 934 A.2d 724, 731 (Pa.Super.2007). Thus, if the party guesses wrong, and omits discussion of an issue or fact that the trial court later states that it found to be pertinent, that issue may be waived. Moreover, to avoid waiver for non-inclusion in the Pa.R.A.P. 1925(b) statement, a party would have to guess at all the possible issues that might arise from the trial court's ultimate explanation of the bases for its ruling. This could subject the party to waiver for over-inclusiveness or vagueness. *See Jones v. Jones,* 878 A.2d 86, 90 (Pa.Super.2005). It would be absurd to believe that the General Assembly intended to force custody litigants to navigate blindly and speculatively through proceedings on appeal.

These problems are complicated further by the fact that, in children's fast track custody cases, a litigant must file his or her Pa.R.A.P. 1925(b) statement contemporaneously with a notice of appeal. *See* Pa.R.A.P. 1925(a)(2)(i). Due to that acceleration of the appellate clock, a transcript is rarely available for the

litigant or attorney to review in preparing the concise statement. Unlike civil and criminal cases in which potential appellants may seek explanations for trial court decisions through post-trial or post-sentence motions, domestic relations matters permit no post-trial practice, except through motions for reconsideration. Pa.R.C.P. 1930.2. Moreover, we cannot blind ourselves to the patent reality that domestic relations dockets involve large numbers of pro se litigants who are unfamiliar with appellate rules and practice. These circumstances, as well as the foundational and irreducible importance of child custody, buttress the conclusion that the legislative mandate to "delineate the reasons" for custody decisions is a mandate to do so at or near the time of verdict.

*Id.* at 953–54.

Prior to *C.B.*, we have, on at least one other reported occasion, dealt with a challenge under section 5323. *M.P. v. M.P.*, 54 A.3d 950 (Pa.Super.2012). In that case, the mother sought permission to travel outside the country with her daughter after the father refused permission. *Id.* at 951. The trial court issued an order with no explanation. *Id.* at 952. The mother raised the trial court's lack of compliance with section 5323(d) as one of her issues on appeal. With little discussion, because this Court remanded on other grounds, we held that the trial court erred when it "failed to provide its reasoning until the appeal was taken." *Id.* at 956.

■ Consistent with our holdings in *C.B.* and *M.P.*, we conclude here that sections 5323(d) and 5328 require the trial court to set forth its *ratio decidendi* at or near the time it issues its decision in a custody proceeding.[3] We have held that, because the best interests of the child are the paramount concern of any custody case, the trial court must address the sixteen best interest factors of section 5328(a) and the ten relocation factors of section 5337(h). *B.K.M. v. J.A.M.*, 50 A.3d168, 172–75 (Pa.Super.2012) (finding the trial court erred in failing to consider all section 5328(a) and section 5337(h) factors). Therefore, by logical necessity, today we emphasize that our holding in *C.B.* (*i.e.*, that section 5323(d) requires the trial court to delineate its reasoning at or near the time of its decision) extends to cases that involve both custody and relocation pursuant to section 5337.

Here, the trial court did not comply with this requirement. However, as we provided in *C.B.*, the rule we articulate is to be given prospective application. *C.B.*, 65 A.3d at 955. The trial court here did not have the benefit of *C.B.*, nor the benefit of our holding today. Accordingly, we decline to vacate on this ground.

■ While Father's first argument implicated the timing of the court's consideration of the factors, Father's second and third issues on appeal challenge the court's actual consideration of the factors outlined in section 5337(h) for relocation and section 5328(a) for custody. Father argues that the trial court did not adequately consider the factors in making its decision and that this constituted an error of law. Father contends that the court's references to the factors in its 1925(a) opinion

---

**3.** We use the phrase "at or near the time the custody decision is made" because, as happened in this case, it is not unusual or inappropriate for a trial court to announce a decision from the bench and, shortly thereafter, provide a written order. When that order follows soon after a decision from the bench and provides the rationale for the decision well in advance of the date by which a notice of appeal must be filed, the demands of section 5323(d) are satisfied.

were not adequate to show that the court considered those factors when making its decision and, at most, show that the court reflected on those factors later, in preparing its opinion. Father's Brief at 15–20. As we held *supra,* the trial court was required under *C.B.* to delineate its reasoning at or near the time of its decision. While, in view of this decision's prospectivity, we have declined to vacate on the basis of the trial court's failure to state its reasoning prior to the 1925(a) opinion, we must still examine whether the trial court adequately considered the factors as required by the statute and our decisional law.

■ We recently held that:

> **All** of the factors listed in section 5328(a) are required to be considered by the trial court when entering a custody order. *Id.* As the trial court failed to properly consider the statutorily mandated factors in arriving at its custody determination, it erred as a matter of law. We are therefore compelled to vacate its order and remand the case for further findings of facts.

*J.R.M. v. J.E.A.,* 33 A.3d 647, 652 (Pa.Super.2011) (emphasis in original). Similarly, with regard to relocation, we held:

> Section 5337(h) mandates that the trial court **shall** consider all of the factors listed therein, giving weighted consideration to those factors affecting the safety of the child. In this case, it cannot be ascertained from the record on appeal whether the trial court considered all of the section 5337(h) factors in reaching its decision.

*E.D. v. M.P.,* 33 A.3d 73, 81 (Pa.Super.2011) (internal citations omitted, emphasis in original). The trial court must consider all ten relocation factors and all sixteen custody factors when making a decision on relocation that also involves a custody decision.

Our review of the trial court's 1925(a) opinion shows that it addressed all of the relocation factors, although the trial court did not always identify those factors specifically or address them in any particular order. While the trial court did briefly address the history of drug abuse and physical and mental conditions of the parties, the court did not consider the history of drug or alcohol abuse of the members of Mother's household or the mental and physical condition of the members of Mother's household. *See* 23 Pa.C.S.A. § 5328(a)(14)-(15). Those factors are especially important here, inasmuch as Mother proposed to live with her sister and her sister's family after the relocation. Without information on the household members with whom Child would be living, at least for some period of time, we cannot conclude that the trial court considered all of the relevant factors. This was error.

Because a remand is required, we need not reach Father's fourth and fifth issues at this time.

Given the trial court's error, we vacate the order, and we remand. Upon remand, the trial court shall afford the parties a hearing at which they both may develop evidence relevant to factors fourteen and fifteen of section 5328, as referenced above. The trial court thereafter shall enter such ruling on the parties' custody and relocation requests as the court deems appropriate. The trial court is required to set forth the reasons for its decision at or near the time of its ruling.

Order vacated. Case remanded. Jurisdiction relinquished.

OLSON, J., joins the majority.

BOWES, J., files a Concurring Opinion in which OLSON, J. also joins.

CONCURRING OPINION BY
BOWES, J.:

I join the learned majority's decision to vacate the custody order due to the trial court's failure to weigh all of the statutory factors that the court was mandated to consider in entering the custody award. As the majority adeptly highlighted, the trial court failed to address two factors that are particularly important under the facts of this case: 1) factor fourteen relating to the history of drug and alcohol abuse by members of Mother's household; and 2) factor fifteen concerning the mental health conditions of members of Mother's household.

In addition, I do not challenge the majority's application of the established principles that trial courts must comply with § 5323(d) before a litigant files a notice of appeal from a custody decision or a ruling regarding relocation. Those holdings are consistent with precedent. *See M.J.M. v. M.L.G.*, 63 A.3d 331 (Pa.Super.2013) ("This Court has previously interpreted [23 Pa. C.S. § 5323(d) ] as requiring a trial court to state the reasons for its custody decision prior to the filing of an appeal").

In *M.P. v. M.P.*, 54 A.3d 950, 955–956 (Pa.Super.2012), which involved a Mother's request to take her daughter for a three-week vacation to Ecuador, this Court held that the trial court erred, *inter alia*, in issuing a custody-related order without any explanation pursuant to § 5323(d) until after the appeal was filed. We stated, "the court's opinion concedes that it did not provide the reasoning for its order until it presented its rationale in its Pa. R.A.P. 1925(a)(2)(ii) opinion. ... Accordingly, we agree with Mother's positions relating to both her second and third issues and, therefore, conclude that the trial

court erred as a matter of law and/or abused its discretion when it ... failed to provide its reasoning until the appeal was taken." *Id.* at 956. This principle enables an appellant to prepare a cogent brief in opposition to the trial court's ruling.

However, having noted my agreement with the above-referenced parts of the majority's decision, I am constrained to distance myself from the majority's reliance on the reasoning employed in *C.B. v. J.B.*, 2013 PA Super 92, 65 A.3d 946. Relying upon my concurring and dissenting opinion in *C.B.*, I hereby note the relevant portions of that writing in lieu of reproducing my position in its entirety. As I expressed in that writing, I believe that 1) this Court's proposed rulemaking in that case was unenforceable *obiter dictum;* 2) we fashioned a nonexistent statutory mandate regarding 23 Pa.C.S. § 5328(a); and 3) we conflated the pertinent features of §§ 5323(d) and 5328(a) in order to craft the proposed rule. My reservations about the *C.B.* court's rationale are many. In the interest of judicial economy, I will address only the facets of that opinion that the majority invokes as support for its holding in the case at bar.

I concede that the *C.B.* decision is binding, but I must observe that several aspects of that rationale remain unconvincing. First, the *C.B.* court's concern that the trial court will not explain the reasons for its custody decision if a party declines to file an appeal is unwarranted. Simply stated, a trial court's compliance with § 5323(d) is not dependent **in any manner** upon a litigant's decision to appeal a custody order. Pursuant to § 5323(d), "The court shall delineate the reasons for its decision on the record in open court or in a written opinion or order." [1] As the Child

---

1. As is apparent from the majority's block quotation, the Court in *C.B.* injected the adverb "then" in its iteration of the statutory provision. *See* Majority Opinion at 833 (quoting *C.B., supra*, 2013 PA Super 92, 65 A.3d 946, 962) ("The court 'shall **then** delineate the

Custody Law unequivocally mandates a trial court to set forth the reasons for its determination in one of the three identified manners, regardless of whether an appeal is pending, the *C.B.* court's anxiety, as embraced by the majority herein, is misplaced. In reality, custody litigants are to be informed of the reasons for custody orders even when no appeal is filed.

In addition, I dispute the majority's adoption of the *C.B.* court's apprehension regarding the challenges a litigant might face if forced to pursue an appeal without full knowledge of a trial court's rationale. In *C.B.*, the court expressed its trepidation that a trial court's failure to proffer its delineation prior to the filing of a notice of appeal would cause a litigant to risk waiving an appellate argument due to a lack of particularity or non-inclusion in a Rule 1925(b) statement. I believe this concern is also unwarranted. As I noted in my dissenting and concurring opinion in *C.B.*, "In civil cases an appellant may state his or her issues in general terms if it 'cannot readily discern the basis for the [trial] judge's decision,' and 'the generality of the Statement will not be grounds for finding waiver.' *See* Pa.R.A.P. 1925(b)(4)(vi)." *C.B., supra,* 65 A.3d at 964. Likewise, I highlighted that this Court can remand a case pursuant to Pa.R.A.P. 1925(c), so that a party may amend or supplement a timely filed Rule 1925(b) statement. Additionally, I pointed out that in appeals designated as children's fast track, we may overlook a party's failure to comply with Rule 1925(a)(2)(i) when no court order has been violated. *See In re K.T.E.L.,* 983 A.2d 745, 747 (Pa.Super.2009); *In re R.N.F.,* 52 A.3d 361, 362–363 (Pa.Super.2012). Thus, as I concluded in *C.B., supra,* 65 A.3d at 964, "I believe sufficient safeguards exist within

reasons for its decision on the record in open court or in a written opinion or order.' ") (original emphasis omitted) (emphasis added). Although statutory language should not be

our case law and rules of appellate procedure to prevent the harsh hypothetical scenarios the majority devised to illustrate its alarm."

I therefore join the majority's decision to vacate the custody award and remand for the trial court to confront all sixteen statutory factors that courts are required to consider in issuing any form of custody, but distance myself from the majority's reliance upon this Court's discussion in *C.B., supra.*

altered in the course of statutory construction, I do not believe that the benign variation changed the import of the statutory provision.