J-S25013-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| M.B.F., n/k/a M.B.B. | : | IN THE SUPERIOR COURT |
| | : | OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| E.T.F. | : | |
| | : | No. 294 MDA 2019 |
| Appellant | | |

Appeal from the Order Entered January 22, 2019
In the Court of Common Pleas of Dauphin County
Civil Division at No: 2018-CV-1060-CU

BEFORE:  STABILE, J., MURRAY, J., and MUSMANNO, J.

MEMORANDUM BY STABILE, J.:                    **FILED JULY 05, 2019**

Appellant, E.T.F. ("Father"), appeals from an order granting Appellee, M.B.F. ("Mother") the right to relocate to Wisconsin with the parties' child.  We affirm.

The trial court summarized the procedural history of this case as follows:

[Mother and Father] were married in July 2012 and separated in September 2014, right around the birth of their only child together, BF (DOB 9/14).  Mother initiated divorce and custody proceedings in Cumberland County in late 2014.  The parties entered a stipulated custody agreement, adopted by the court November 20, 2014, under which terms they shared legal custody and Mother was granted physical custody four out of seven days per week to accommodate her work schedule as a registered nurse at a local hospital.  Father had physical custody the remaining three days of the week.  The parties divorced in March 2015.  In August 2017, Mother married MB (Stepfather), who was in a plastic surgery residency at a local hospital.

In February 2018, the parties filed an uncontested petition to transfer the custody action to Dauphin County since both had moved to Harrisburg.  At the same time, Mother sought

modification of the existing custody agreement. Following conciliation, the parties agreed to a custody order, entered by the Honorable Royce Morris on March 28, 2018, under which terms the parties maintained shared legal custody. Mother's physical custody was altered slightly, granting her physical custody on an alternating weekly schedule consisting of five days the first week and three days the next. Father was granted physical custody the remaining time. The parties further agreed to alternating holidays and an equal number of vacation days. In October 2018, Mother filed a petition to modify custody and notice of proposed relocation. Mother sought primary physical custody and permission to move with the Child to Wisconsin. Mother averred that Stepfather had been selected for an elite, one-year fellowship at a Milwaukee hospital commencing August 1, 2019 and that she expected to move with him to the suburb of Wauwatosa this summer. Mother suggested that Father have extended physical custody during the summer and school holidays. Father filed a counter-affidavit opposing relocation and seeking primary physical custody if Mother moved.

Trial Court Opinion, 3/11/19, at 1-2. On January 17, 2019, the trial court held a hearing relating to Mother's petition. The parties presented the following evidence:

Mother testified that she and Father separated during her pregnancy with their Child and that since that time, she and Father have co-parented the Child separately. According to Mother, as of the hearing date, she and Father had been sharing physical custody equally, on a 5-2, 2-5 schedule. The Child is currently 4½ years old and has been attending a Harrisburg area pre-school three days per week for three hours per day. Mother currently works as an RN but stated that since she is pregnant with her and Stepfather's first child, she does not plan to return to work.

Mother believes she has acted more as the primary parent to the Child than has Father, noting that she arranges all of the Child's medical appointments, school activities and play dates. Mother testified that currently she rarely works on days she has custody of the Child and that she and the Child are close and connected. She and the Child like to bake together, learn numbers and letters, sing, play outside, go to the zoo and take walks with the family dog. After her second child is born, Mother will be with her infant

and the Child full time. Mother stated that the Child is "inseparable" from Stepfather and that the Child calls him "Daddy [Stepfather's first name]."

Mother agreed that ETF is a good Father and believes the Child needs his Father in his life. She testified that Father has been involved in the Child's life including taking the Child to and from pre-school one day per week, coaching the Child's T-ball team, attending bible school with the Child and taking the Child to the local community center. The Child refers to Father as "Daddy" and to Father's fiancée as "Mommy [fiancée's first name]."

Mother testified that she and Stepfather do not plan to stay in Wisconsin beyond the one-year fellowship and that after it is completed, they hope to move back closer to the Harrisburg area. According to Mother, the fellowship will afford Stepfather significantly greater job opportunities for future employment. She anticipates that following their one-year stay in Wisconsin, Stepfather would be able to find a position within close driving distance to Central Pennsylvania and that she foresees they will remain on the East Coast.

In anticipation of the move to Wisconsin, Mother and Stepfather will rent a three-bedroom house in Wauwatosa, close to Stepfather's hospital, the local elementary school, zoo and a playground. Mother anticipates that the Child would be enrolled in "junior" kindergarten at the local school beginning in September 2019, which is five half days a week. Mother noted that her current school district (Central Dauphin) does not offer a similar pre-K program.

Assuming the Child is permitted to move to Wisconsin, Mother said she would work to keep the Child's relationship strong with Father and Father's one-year-old child, OF. Mother plans to maintain this contact through daily FaceTime connections and phone calls. Mother noted that under the current custody schedule, the non-custodial parent stays in contact with the Child using these methods. Mother was additionally willing to keep in contact with Father through texts, photos and otherwise. If the Child lives in Wisconsin, Mother would encourage Father and his parents to visit the Child there. Mother also stated that she has the financial means to travel back to the Harrisburg area with the Child every couple of months, primarily by plane. Mother indicated there are

- 3 -

direct flights from Chicago to Harrisburg and that Chicago is not too far from her proposed Wisconsin residence.

Mother's relatives live in the Harrisburg area including her mother, two grandmothers, a sister and two aunts. Mother and the Child are particularly close with her paternal grandmother and aunts and they have visited frequently. Her mother has early Alzheimer's, so she and the Child do not see her much. Mother has no relatives in Wisconsin though one of her husband's colleagues from the same hospital has also been selected to work at the same Milwaukee hospital. She and Stepfather are good friends with him and his wife, who have two children. This couple would be available to provide child care if needed.

Stepfather testified that the fellowship will "triple" the number of positions available to him upon the conclusion thereof, including in this area and in larger cities. He admitted that it is impossible to tell what the job market will be in the summer of 2020 but that he intends to do what is best for the Child and his family.

Father testified that he is a mental health professional who has been employed for over seven years as a family-based therapist. He works in his Carlisle office one day per week and the remainder of his time involves flexible scheduling for in-home therapy in the Dauphin County area. Father lives with his fiancée, JA, who is a pre-school teacher, along with their one-year-old son, OF. They live in a three-bedroom home with a fenced-in backyard. Father and JA are planning to marry within the year, after this relocation issue is settled. JA has known the Child since he was three months old. Father's parents live in Central Pennsylvania and his father has helped provide childcare; Father has no relatives or connections to Wisconsin. His fiancée's relatives all live in this area as well.

Father testified that MBB is an excellent mother. If awarded primary physical custody, Father would keep the Child in his current pre-school and would agree that the Child spend summers and holidays in Wisconsin with Mother. In addition, he would plan for the Child to start half-day kindergarten in the Central Dauphin School District in the fall of 2020. He would additionally work to make sure Mother had regular contact with the Child through FaceTime, text messaging and picture messaging.

Father believed that allowing relocation would disrupt stability in the Child's life noting he has firm attachments to the community and his and Mother's relatives, including grandparents, aunts, cousins, as well as to JA's relatives. A relocation would disrupt Father's time with the Child including T-ball, soccer and their breakfasts out at diners.

Father testified that he has been very involved in the Child's life including coaching his T-ball team, weekly church and youth group meetings and attending a local community center for weekly rock climbing and swimming classes. Father testified the Child plays with a number of other children in the neighborhood where Father lives.

Trial Court Opinion, 3/11/19, at 3-5.

On January 22, 2019, the trial court entered an order granting Mother permission to relocate to Wisconsin. The court also issued a separate custody order/parenting plan that same day which addressed physical custody arrangements for the Child between June 14, 2019 and July 14, 2020, corresponding to Stepfather's one-year fellowship in Wisconsin. The order, whose contents Mother proposed, directed the parties to exercise custody under the existing March 28, 2018 custody schedule until June 14, 2019. The court granted Father primary physical custody for the summer, from June 14, 2019 through August 15, 2019. Commencing August 15, 2019, the court granted Mother primary physical custody through the remainder of Stepfather's fellowship after which time the custody schedule would be subject to modification depending upon Stepfather's new employment, likely closer to the Harrisburg area. From August 15, 2019 through July 14, 2020, the court granted Father specific periods of physical custody each month in Harrisburg,

including three-day weekends in both September and October, six days over Thanksgiving, a nine-day period over Christmas, a three-day weekend in February 2020, school breaks from March 25 to 29, 2020 and April 19 to 23, 2020, and following the probable end of the Child's pre-school year, from June 14 to July 14, 2020. The court also granted Father the right to visit the Child anytime in Wisconsin with an option to stay in an extra bedroom at Mother's home to reduce his costs.

Father timely appealed the January 22, 2019 relocation order to this Court. Both Father and the trial court complied with Pa.R.A.P. 1925.

In his appellate brief, Father raises four issues in the Statement of Questions Presented:

> 1. Whether the Honorable Trial Court erred and committed an abuse of discretion in applying and weighing the ten (10) relocation factors pursuant to 23 Pa.C.S.A. § 5337(h)?
>
> 2. Whether the Honorable Trial Court erred and committed an abuse of discretion in granting [Mother's] Motion for Relocation because it was unreasonable to grant relocation in light of the factual record before the Court?
>
> 3. Whether the Honorable Trial Court erred when it made specific factual findings about relocation not supported by the testimonial record?
>
> 4. Whether the Honorable Trial Court erred in finding that [Mother] met her burden of establishing that relocation is in the [Child's] best interest?

Father's Brief at 5. The argument section of Father's brief, however, has only one argument: the trial court abused its discretion in determining that

relocation of the Child was proper under 23 Pa.C.S.A. § 5337(h). We limit our review to this question.

Our standard of review in child custody and relocation cases is as follows:

> In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*C.R.F. v. S.E.F.*, 45 A.3d 441, 443 (Pa. Super. 2012).

In determining whether to grant a proposed relocation, the trial court must consider all ten relocation factors listed in 23 Pa.C.S.A. § 5337(h) and all sixteen custody factors listed in 23 Pa.C.S.A. § 5328(a). *A.M.S. v. M.R.C.*, 70 A.3d 830, 836 (Pa. Super. 2013). The record reflects that the trial court carefully considered each factor in both statutes in reaching its decision.

In determining the issue of relocation under Section 5337(h),

> the court shall consider the following factors, giving weighted consideration to those factors which affect the safety of the child:

> (1) The nature, quality, extent of involvement and duration of the child's relationship with the party proposing to relocate and with the nonrelocating party, siblings and other significant persons in the child's life.

(2) The age, developmental stage, needs of the child and the likely impact the relocation will have on the child's physical, educational and emotional development, taking into consideration any special needs of the child.

(3) The feasibility of preserving the relationship between the nonrelocating party and the child through suitable custody arrangements, considering the logistics and financial circumstances of the parties.

(4) The child's preference, taking into consideration the age and maturity of the child.

(5) Whether there is an established pattern of conduct of either party to promote or thwart the relationship of the child and the other party.

(6) Whether the relocation will enhance the general quality of life for the party seeking the relocation, including, but not limited to, financial or emotional benefit or educational opportunity.

(7) Whether the relocation will enhance the general quality of life for the child, including, but not limited to, financial or emotional benefit or educational opportunity.

(8) The reasons and motivation of each party for seeking or opposing the relocation.

(9) The present and past abuse committed by a party or member of the party's household and whether there is a continued risk of harm to the child or an abused party.

(10) Any other factor affecting the best interest of the child.

23 Pa.C.S.A. § 5337(h). As the proponent of relocation, Mother has "the burden of establishing that the relocation will serve the best interest of the child as shown under the factors set forth in [Section 5337(h)]." 23 Pa.C.S.A. § 5337(i). Furthermore, "each party has the burden of establishing the

integrity of that party's motives in either seeking the relocation or seeking to prevent the relocation." *Id.*

With regard to factor (1), the nature of the Child's relationship with the parties, the trial court stated at the conclusion of the relocation hearing: "Both [parties] have been certainly involved with the Child during the Child's life, and the nature and quality of that has been somewhat similar. Although, it sounds like Mom has been more of the primary parent, although the time was divided and Dad has been an active father indeed." Trial Ct. Op. at 7 (citing N.T., 1/17/19, at 58). Father argues that it was unreasonable for the court to find that Mother was the primary parent since it acknowledged that Father has been an active parent. Mother responds that is reasonable for a parent such as Father to be an active parent without being the primary parent. We agree with Mother. The record supports the trial court's conclusion that while Father was an active parent, Mother was even more active and thus is the primary parent.

Factor (2) requires the court to address the Child's age, developmental stage, needs and the likely impact that relocation will have on the Child. The trial court stated with regard to Factor (2): "The Child is only [four] and a half, so the impact on educational issues is not present as it is when a child is older and school age and social relationships are much more critical, as well as maintaining academics if the school is a particularly good one. So that really is not a factor." *Id.* Father contends that the court ignored the Child's strong

ties to two young boys who live in houses adjacent to Father's. Father's Brief at 16. We acknowledge that relocation presents challenges to any child, and that this Child may experience sadness by having to move to the Midwest and sever (at least in the short run) bonds he has formed with other children near Father's house. Nevertheless, we agree with the trial court that relocation will not cause as great an impact on the Child as it would if he were older, when his social network undoubtedly will broaden and his bonds with other children will become much deeper. Moreover, Mother promised to mitigate any adverse effects of relocation by maintaining the Child's relationship with Father and Father's one-year-old child through daily FaceTime connections and phone calls. The court has further reduced any negative effects of relocation by granting Father primary custody during vacation periods in the school year and for one month after the conclusion of the school year (June 14, 2020 to July 14, 2020). The court also permitted Father to visit the Child in Wisconsin during the school year.[1] Moreover, Mother presented evidence that the Child will benefit from relocation because the local school in Wisconsin offers a pre-K program while her current school district in Dauphin County does not. For these reasons, the trial court acted within its discretion by resolving Factor (2) in favor of Mother.

_____

[1] Moreover, the court granted primary custody to Father during the summer of 2019 until the Child leaves for Wisconsin.

Factor (3) requires the court to address how best to preserve the relationship between the nonrelocating party and the child through suitable custody arrangements. Father argues that "Child's relationship with his father will be materially and significantly changed should Child only see his Father over a few holidays and one month in the summer." Father's Brief at 17. As stated above, the court granted Father primary custody for two months in the summer of 2019 (June 14, 2019 to August 15, 2019), a series of monthly visits during the upcoming school year, and for one month following the conclusion of the upcoming school year (June 14, 2020 to July 14, 2020). The court also permitted Father to visit the Child in Wisconsin during the school year. This custody schedule, the court reasoned, will

> preserve the Child's relationship with Father, allowing him to see the Child almost every month over that period with the financial costs of custodial visits being substantially borne by Mother. Over the 13-month duration, even with the relocation and revision in custody schedule, Father will have physical custody for 128 days, or 32% of the time, which does not even include additional time Father may exercise completely at his option by visiting the Child in Wisconsin.

Trial Court Opinion, 3/11/19, at 11. We conclude that the trial court acted within its discretion by creating a custody schedule that meets the Child's best interests and adequately calibrates Father's and Mother's custodial rights.

The trial court concluded that factor (4), the Child's preference, and factor (5), the parties' patterns of promoting or thwarting one another's access to the Child, were not at issue here. Father does not dispute this conclusion. Therefore, we need not address these factors further.

- 11 -

Factors (6) and (7), which we address together, require the court to address whether relocation will enhance the general quality of life for the party seeking relocation (Mother) and for the Child. The trial court found that relocation will enhance Mother's quality of life, and, in turn, the Child's quality of life, "based on the increased financial income quite predictable for a doctor who completes a fellowship as opposed to a mere residency." *Id.* at 7. This finding was within the trial court's discretion. Even if, as Father argues, Stepfather's salary in Wisconsin will not exceed Father's salary in Pennsylvania, it is reasonable to infer that Stepfather's position in Wisconsin will give rise to substantially more lucrative employment in the future. Such long-term benefits will enhance both Mother's and the Child's quality of life. Father complains that the court only evaluated the financial consequences of relocation but without considering the Child's emotional needs or educational opportunities in Pennsylvania. We disagree. Other sections of the court's opinion demonstrate that it painstakingly evaluated the Child's emotional needs and educational opportunities. The court determined that under these challenging but relatively short-term circumstances, the Child's emotional needs were best served by relocating with his primary parent, Mother, and loving stepfather to Wisconsin. Moreover, as discussed above, the Child will benefit from the opportunity to attend pre-K every weekday.

Turning to factor (8), each party's motives for seeking or opposing relocation, the court determined that neither party had improper motives. The

record supports this finding. Both parties clearly love the Child but simply disagree whether relocation is in his best interests. The trial court's order is a thoughtful and rational disposition to this challenging problem.

Factor (9) requires the court to address any drug or alcohol problems. The court found no drug or alcohol problems that affect this case, and the record supports this conclusion.

Factor (10) requires the court to address any other factor affecting the Child's best interests. The court used Factor (10) as a vehicle to analyze the Section 5328 factors.[2] We need not recount the trial court's analysis

_____

[2] Section 5328 provides in relevant part:

> In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:
>
> (1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.
>
> (2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.
>
> (2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).
>
> (3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S.A. § 5328(a).

exhaustively. Suffice it to say that (1) most of the Section 5328 factors overlap with the Section 5337 factors; (2) the Section 5328 factors that do not overlap (whether a party has abused the child, whether there is drug or alcohol abuse by a party or a person in the party's household, the mental and physical health of a party or a person in the party's household) are not relevant to this case; and (3) the court carefully studied the Section 5328 factors and determined that the parties should share custody during the relocation period in the manner described above. For the reasons provided on pages 8-11 of its opinion, we hold that the trial court properly exercised its discretion. We direct that a copy of that opinion be filed along with this memorandum.

For these reasons, the trial court properly exercised its discretion in granting Mother's motion for relocation and crafting its relocation order in the manner described above.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 07/05/2019

- 15 -