J-S10031-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| A.R.G. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| J.L.G. | : | |
| | : | |
| Appellant | : | No. 1518 MDA 2020 |

Appeal from the Order Entered October 15, 2020
In the Court of Common Pleas of Dauphin County Civil Division at No(s):
2019-CV-2933-CU

BEFORE:  MURRAY, J., McLAUGHLIN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:                    **FILED MAY 13, 2021**

J.L.G. (Father) appeals from the October 15, 2020 order of the Court of Common Pleas of Dauphin County (trial court) granting A.R.G. (Mother) primary physical custody of T.G. (age 5), B.G. (age 7) and H.G. (age 9) (collectively, the Children) during the school year and allowing their relocation to Maryland.  We vacate the order and remand for further proceedings.

**I.**

We glean the following facts from the certified record.  On April 19, 2019, Mother filed a complaint for custody in the trial court seeking shared

_____

[*] Retired Senior Judge assigned to the Superior Court.

legal custody and primary physical custody of the Children.[1]  Mother sought to relocate with the Children to Maryland.  Father opposed relocation and sought shared physical custody beginning in September 2019 when he would move to Dauphin County.

An interim custody order entered on July 19, 2019, following a conciliation conference ordered Mother not to remove the Children from Dauphin County without prior court approval.  The order granted shared legal custody and partial physical custody on weekends to Father.  Despite the order prohibiting her from doing so, Mother relocated the Children to Maryland prior to the custody trial.  As a result, Father filed a petition for contempt.

Following multiple continuances, the custody trial was held on September 4 and 10, 2020.  Father testified that he and Mother were married for approximately 8 years and during that time he was serving as a Blackhawk pilot in the Army.  Due to his position, the family was stationed in areas throughout the United States and he was twice deployed to Afghanistan. Mother worked part-time as a waitress at various times throughout this period. While Father was stationed in the United States, Mother and Father shared childcare responsibilities.

---

[1] Custody of the Children was previously governed by a custody order entered in Tennessee in 2018.

In May 2018, the family intended to move from Kentucky to Pennsylvania where Mother would attend nursing school and they would be closer to extended family. Father was scheduled to deploy to Afghanistan so Mother planned to live with the Children at maternal grandmother's home until the family could buy a home in Harrisburg.

However, before Father could join the rest of the family in Harrisburg, Mother filed for divorce and told Father that she was engaged to another man. Thereafter, while Father was deployed in Afghanistan, he learned from Mother that she had been physically abused by her fiancé on two occasions while the Children were present in the house. Father urged Mother to report the abuse to the police and she subsequently obtained a Protection From Abuse (PFA) order against her fiancé in the fall of 2018. The Children were also protected by the PFA.

After moving to Pennsylvania, Mother dropped out of nursing school and began working again as a waitress. She told Father that she was having difficulty parenting the Children alone. B.G. was diagnosed with oppositional defiant disorder (ODD), intermittent explosive disorder (IED), adjustment disorder and attention deficit hyperactivity disorder (ADHD). Following the move, he exhibited behavioral problems. Mother admitted B.G. for inpatient mental health care at a hospital in Philadelphia for two weeks in January 2019. She visited him daily while he was hospitalized.

Mother began another relationship soon after obtaining the PFA against her prior fiancé. However, that relationship ended in January 2019 when she suffered a miscarriage. Prior to the miscarriage, Mother did tell the Children that they might have a little brother soon, but the Children never met Mother's paramour. In February 2019, Mother began a new relationship with her current husband (Husband), who she married in June 2019. She initiated the custody action in Pennsylvania to seek permission to relocate with the Children to Maryland where they would live with Husband and his three minor children. Following the custody conciliation conference, Mother notified Father by text message that she was moving with the Children in August 2019. She subsequently enrolled the Children in school in Maryland. Mother and Father now live approximately 70 miles or an hour-and-a-half drive apart.

Mother and Husband purchased their house in Maryland through foreclosure and were in the process of renovating at the time of the trial. The Children share one bedroom with full-size bunk beds, and B.G. and T.G. share one of the beds. Mother testified that the home renovations would be complete within two weeks following the trial, but she did not think the Children would want to move into separate bedrooms. She testified that even if she separated the Children, they would come back together.

Mother testified that the Children have strong relationships with Husband's children and they "hate being separated." Notes of Testimony, 9/4/20, at 96. When they are not at home together, all the children play

games with each other online and talk on FaceTime. When they are all at the home, they spend all their time together and prefer to sleep together. Mother testified that all six of the children in the home had bonded with each other. In addition, maternal grandmother visits Maryland every other week for a few days to spend time with the Children. The Children also visit with their cousins who live half an hour away approximately twice a month.

B.G. had been attending counseling monthly when the family lived in Harrisburg and managing his conditions with medication. After the relocation, Mother continued taking B.G. to therapy in Harrisburg for approximately nine months until she found a more local counselor to continue treatment. Father had previously received reports regarding B.G.'s condition from his counselor in Harrisburg but testified that he had not been in contact with the new counselor in Maryland. When he lived in Pennsylvania, B.G. had an individualized education plan (IEP) that allowed him to attend a school that provided more one-on-one attention in the classroom. Since moving to Maryland, B.G. received therapy through a psychologist and attended counseling sessions through his school. He has an IEP that placed him in a special classroom with two other classmates and an aide to help him individually. H.G. also has an IEP that afforded him weekly sessions with a speech pathologist.

Mother is currently attending nursing school and she attends classes virtually for two hours on Mondays and a full day on Wednesdays. The

Children attend school virtually and Mother hired a private teacher to supervise them during their classes. Mother pays the teacher $1,200 per month and the Children go to her house during the school day to complete their classes. Mother testified that B.G.'s therapist and teacher recommended that she hire an instructor for virtual schooling to ease his transition between learning at home and in school. Mother's home has a swimming pool so she also hired a swimming instructor to teach the Children to swim and use the pool safely. The Children all participated in various sports and after-school activities, though at the time of trial some of the activities had been cancelled due to the coronavirus pandemic. Mother requested that the trial court grant Father physical custody every other weekend during the school year and 50/50 physical custody during the summer.

After Father returned from his second deployment, he spent two weeks at the family home in Pennsylvania in March 2019 before returning to Tennessee to complete his Army service. In June 2019, he was honorably discharged and had received a conditional employment offer from Trans States Airlines as a regional commercial airline pilot. Father completed the company's training program in St. Louis to obtain his pilot's license from October 2019 through February 2020. Mother testified that Father saw the Children approximately three or four times between when he returned to Tennessee and when he completed his training program for Trans States

Airlines the following year. During that time, Mother ensured that the Children spoke with Father via FaceTime at least every other day.

Before Father could begin working full-time as a pilot, however, Trans States Airlines went out of business due to the coronavirus pandemic. Father relocated to Enola, Pennsylvania, and began working at an accounting firm. In April 2020, Father resumed partial physical custody of the Children every other weekend. He testified that he now works from home between 9 AM and 5 PM on Monday through Friday. He rents a home where each of the Children have their own room and bed. He would be able to enroll the Children in the Cumberland Valley School District and supervise them at home if they attended school virtually. He testified that he would be able to take B.G. to his required medical and counseling appointments if he had primary custody. The Children's maternal grandmother lives approximately 20 minutes from his home and their paternal grandmother lives approximately 45 minutes away. The Children visit frequently with paternal grandmother when they stay with Father. He requested the trial court grant him 50/50 custody or primary physical custody.

Father testified that he believed Mother spoke poorly about him to the Children because they once commented that "mom and dad aren't together anymore because dad did a really bad thing." Notes of Testimony, 9/4/20, at 69. Father confirmed that when the family still lived together, he had locked the Children into a room as discipline.

Following trial, the trial court issued a memorandum opinion analyzing the custody factors pursuant to 23 Pa.C.S. § 5328(a) and an order modifying custody. Memorandum Opinion & Order, 10/15/20. The final custody order granted Mother and Father shared legal custody. Mother was granted primary physical custody during the school year and Father was granted partial physical custody every other weekend. During the summer recess, Father was granted primary physical custody and Mother was granted partial physical custody every other weekend, with an additional non-consecutive two weeks of partial physical custody. In addition, the trial court held Mother in contempt for relocating the Children in violation of the interim custody order.

Father filed a timely notice of appeal and he and the trial court have complied with Pa.R.A.P. 1925.

**II.**

Father raises two issues on appeal.[2] First, he argues that the trial court abused its discretion in analyzing certain custody factors pursuant to 23

---

[2]    [O]ur scope is of the broadest type and our standard is an abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law

- 8 -

Pa.C.S. § 5328.  Second, he argues that the trial court abused its discretion by failing to analyze the relocation factors pursuant to 23 Pa.C.S. § 5337 when it issued the custody order and in finding that relocation was in the best interest of the Children.  We begin with his second issue, as it is dispositive.

When deciding a petition to modify custody, a court must conduct a thorough analysis of the best interests of the child based on the relevant Section 5328(a) factors.[3]  **_See E.D. v. M.P._**, 33 A.3d 73, 80 (Pa. Super. 2011).

_____

or are unreasonable in light of the sustainable findings of the trial
court.

**_C.R.F. v. S.E.F._**, 45 A.3d 441, 443 (Pa. Super. 2012) (citation omitted).

[3] The relevant factors are:

(1) Which party is more likely to encourage and permit frequent
and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member
of the party's household, whether there is a continued risk of harm
to the child or an abused party and which party can better provide
adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a)(1) and (2)
(relating to consideration of child abuse and involvement with
protective services).

(3) The parental duties performed by each party on behalf of the
child.

(4) The need for stability and continuity in the child's education,
family life and community life.

(5) The availability of extended family.

"All of the factors listed in section 5328(a) are required to be considered by the trial court when entering a custody order." ***J.R.M. v. J.E.A***., 33 A.3d 647,

_____

> (6) The child's sibling relationships.
>
> (7) The well-reasoned preference of the child, based on the child's maturity and judgment.
>
> (8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.
>
> (9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.
>
> (10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.
>
> (11) The proximity of the residences of the parties.
>
> (12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.
>
> (13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.
>
> (14) The history of drug or alcohol abuse of a party or member of a party's household.
>
> (15) The mental and physical condition of a party or member of a party's household.
>
> (16) Any other relevant factor.

23 Pa.C.S. § 5328(a).

652 (Pa. Super. 2011) (emphasis omitted). However, "[i]t is within the trial court's purview as the finder of fact to determine which factors are most salient and critical in each particular case." *M.J.M. v. M.L.G.*, 63 A.3d 331, 339 (Pa. Super. 2013). "The best-interests standard, decided on a case-by-case basis, considers all factors that legitimately have an effect upon the child's physical, intellectual, moral, and spiritual well[-]being." *Saintz v. Rinker*, 902 A.2d 509, 512 (Pa. Super. 2006) (citation omitted).

The required factors for consideration of a relocation petition are set forth in 23 Pa.C.S. § 5337(h).[4] "The party proposing the relocation has the

_____

[4] The relocation factors are:

(1) The nature, quality, extent of involvement and duration of the child's relationship with the party proposing to relocate and with the nonrelocating party, siblings and other significant persons in the child's life.

(2) The age, developmental stage, needs of the child and the likely impact the relocation will have on the child's physical, educational and emotional development, taking into consideration any special needs of the child.

(3) The feasibility of preserving the relationship between the nonrelocating party and the child through suitable custody arrangements, considering the logistics and financial circumstances of the parties.

(4) The child's preference, taking into consideration the age and maturity of the child.

(5) Whether there is an established pattern of conduct of either party to promote or thwart the relationship of the child and the other party.

burden of establishing that the relocation will serve the best interest of the child" based on the relocation factors and "[e]ach party has the burden of establishing the integrity of that party's motives in either seeking the relocation or seeking to prevent the relocation." 23 Pa.C.S. § 5337(i)(1)-(2). In addition, the trial court "shall not confer any presumption in favor of relocation" when a party relocates with the child prior to the hearing. 23 Pa.C.S. § 5337(l).

When both custody and relocation are at issue, the court must consider both sets of factors to determine how the child's best interests may be served. *A.V. v. S.T.*, 87 A.3d 818, 823 (Pa. Super. 2014). When fashioning a custody award, the court must set forth its assessment of the required factors "on the

_____

(6) Whether the relocation will enhance the general quality of life for the party seeking the relocation, including, but not limited to, financial or emotional benefit or educational opportunity.

(7) Whether the relocation will enhance the general quality of life for the child, including, but not limited to, financial or emotional benefit or educational opportunity.

(8) The reasons and motivation of each party for seeking or opposing the relocation.

(9) The present and past abuse committed by a party or member of the party's household and whether there is a continued risk of harm to the child or an abused party.

(10) Any other factor affecting the best interest of the child.

23 Pa.C.S. § 5337(h).

record in open court or in a written opinion or order," and this assessment must be made "prior to the deadline by which a litigant must file a notice of appeal." *Id.* (quoting 23 Pa.C.S. § 5323(d); *C.B. v. J.B.*, 65 A.3d 946, 955 (Pa. Super. 2013)). While there is no required level of detail the trial court must set forth in support of its assessment, the explanation must address all relevant factors. *Id.*

We have previously held that a trial court may not cure its failure to set forth its reasoning related to the required custody and relocation factors at or near the time of entering the order by addressing the factors in an opinion pursuant to Pa.R.A.P. 1925(a). *A.M.S. v. M.R.C.*, 70 A.3d 830 (Pa. Super. 2013). We concluded that allowing the trial court to delay placing its reasoning on the record would be contrary to the plain language of Section 5323(d) and could result in a litigant being forced to file a notice of appeal and concise statement without knowing the trial court's rationale for its order. *Id.* at 833-34 (citing *C.B.*, *supra*, at 952-54). To protect the due process rights of the parents involved, Section 5323(d)'s requirement that reasoning be placed on the record at or near the time of the order applies equally to custody, relocation or the combination of both. *Id.* at 835.

Here, the trial court entered the final custody order on October 15, 2020, with an accompanying memorandum detailing its analysis of the custody factors in Section 5328. Based on its analysis of the factors, the trial court granted Mother primary physical custody during the school year and Father

primary physical custody during the summer, with each parent exercising partial physical custody when they did not have primary physical custody. **See** Final Custody Order, 10/15/20, at 2-3. Because the trial court did not set forth its reasoning and analysis of the relocation factors, it committed an error of law. **A.M.S.**, **supra**.

In its opinion pursuant to Pa.R.A.P. 1925(a), the trial court acknowledged that it failed to address the relocation factors in its initial memorandum and order following the custody trial. Trial Court Opinion, 12/23/20, at 5. The trial court went on to address each of the ten relocation factors in its opinion and concluded that none of the factors would have altered its decision regarding custody of the Children. **Id.** at 5-9. Additionally, the trial court noted that it had held Mother in contempt for violating the interim custody order by relocating the Children prior to the trial. **Id.** at 5. However, as noted **supra**, the trial court cannot cure its failure to comply with Section 5323(d)'s mandate by including its reasoning in its opinion pursuant to Pa.R.A.P. 1925(a). **A.M.S.**, **supra** (citing **C.B.**, **supra**). By this time, Father had already filed his notice of appeal and concurrent concise statement without the benefit of the trial court's reasoning for granting relocation.

Mother cites **S.J.S. v. M.J.S.**, 76 A.3d 541 (Pa. Super. 2013), for the proposition that the trial court may conduct a dual analysis of the custody and relocation factors when fashioning a custody order, rendering separate consideration of each individual factor unnecessary. **See** Mother's Brief at 14.

There, the court held a single hearing related to custody and relocation and considered both sets of factors in written opinions when reaching a final custody determination. *Id.* at 549-50. We held that there was no error when the trial court issued a "comprehensive analysis of each relevant factor" while recognizing that the custody and relocation issues were inherently related. *Id.* at 550. This is not comparable to the situation herein, where the trial court only addressed the custody factors in fashioning its order and neglected the relocation factors entirely.

Mother also contends that the trial court addressed every relocation factor in its initial opinion even though it did not explicitly outline its conclusions related to each factor. *See* Mother's Brief at 14. However, while there is some overlap between the custody and relocation factors, not every factor is identical. For relocation, the trial court must consider, *inter alia*, "[w]hether the relocation will enhance the general quality of life for the party seeking the relocation," "[w]hether the relocation will enhance the general quality of life for the child," and "the reasons and motivation of each party for seeking or opposing the relocation." 23 Pa.C.S. § 5337(h)(6), (7), (8). These factors are not required for consideration when awarding custody and were not considered by the trial court in its initial memorandum opinion. *See* 23 Pa.C.S. § 5328(a).

Moreover, here, the trial court's analysis of the custody factors did not include any significant consideration of the effect of relocation on Father's

ability to exercise custody. *See* 23 Pa.C.S. § 5337(h)(3) ("considering the logistics and financial circumstances of the parties" in an analysis of the feasibility of maintaining the relationship between the child and non-relocating party). The trial court offered limited comments regarding the effect the relocation had on the Children and their relationships with Father and Mother.

For example, in factor 5 related to the availability of extended family, the trial court noted that paternal grandmother lives 45 minutes from Father and that maternal grandmother lives in Dauphin County but visits the Children in Maryland on a regular basis. It also stated that Mother's brother and the Children's cousins visit twice a month and that Mother has a sister in Ohio. The trial court did not further discuss how relocation affected the Children's relationships with these family members. In considering factor 11, the proximity of the residences of the parties, the trial court merely stated without further analysis: "The proximity of the parties is the biggest issue in this custody matter. Mother currently lives in Myersville, Maryland and Father has settled in Enola; this is a distance of 90 miles[5] and approximately an hour and a half drive." While the memorandum described the Children's daily lives in Maryland following the relocation, it did not address the relocation factors as they related to the Children's lives in Dauphin County prior to the relocation

---

[5] We note that the subsequent opinion pursuant to Pa.R.A.P. 1925(a) states that Mother and Father live approximately 70 miles or an hour-and-a-half apart. Trial Court Opinion, 12/23/20, at 6.

in defiance of the interim court order. *See* 23 Pa.C.S. § 5337(h)(7). Thus, it is not clear from the record that the trial court considered each of the relocation factors prior to issuing the custody order.

We conclude that the trial court committed an error of law by failing to address the relocation factors under Section 5337(h) in its initial memorandum opinion accompanying the final custody order. The relocation factors must be considered before the relocation petition is granted to ensure that the trial court took into consideration the effect of relocation on the Children and the parties prior to crafting its final custody order. Thus, we vacate the October 15, 2020 custody order and remand for further proceedings. The trial court must consider the relocation factors in conjunction with the custody factors and issue a new order addressing the parties' custody and relocation requests. Due to our disposition, we do not address Father's first issue on appeal.

Order vacated. Case remanded for further proceedings. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/13/2021