J-A04007-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| DELANEY J. HERTZOG | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JONATHAN FRANCISCO | : | |
| | : | |
| Appellant | : | No. 1374 MDA 2025 |

Appeal from the Order Entered September 4, 2025
In the Court of Common Pleas of Lancaster County Civil Division at
No(s):  CI-24-00712

BEFORE:  PANELLA, P.J.E., KING, J., and LANE, J.

MEMORANDUM BY PANELLA, P.J.E.:                **FILED: MARCH 9, 2026**

Jonathan Francisco ("Father") appeals *pro se* from the custody order entered on September 4, 2025, providing Delaney J. Hertzog ("Mother") with primary physical custody of their 5-year-old daughter ("Child") and detailed requirements for Father to obtain unsupervised partial custody. After a thorough review of the record and applicable law, we find the trial court's opinion and order are supported by the record and free of legal error. The trial court thoughtfully analyzed the required custody factors in issuing its decision. We therefore affirm the trial court based upon its well-reasoned opinion dated October 25, 2025.

The trial court set forth the relevant factual and procedural history:

[Mother] filed her complaint for custody through counsel on January 30, 2024. [Mother] sought shared legal and primary physical custody. Two days later, on February 1, 202[4], [Mother] filed her criminal record/abuse history verification form

("Verification form"). An initial custody conference was held by Custody Conference Officer Richard J. Gromen, Jr., Esquire, [("Officer Gromen")] on July 23, 2024, and an order was issued July 29, 2024. That order granted [Mother] sole legal and physical custody until [Father] filed his Verification form, at which time [Father] would be awarded supervised custody.

[Father] filed a ["]Praecipe to Vacate Void Order and Recuse Order to Show Cause["] on August 14, 202[4]. Among other things, [Father] requested that Judge Christina M. Parsons[,] to whom the case was originally assigned, recuse herself due to an alleged conflict of interest. That petition was denied on August 22, 2024. [Father] filed a ["]Fee Simple Absolute Title["] on September 9, 2024, affirming his "Living Man Status and Sovereignty," declaring that "JONATHAN FRANCISCO" is a "legal entity or 'strawman' created by the state," and requiring the federal and state governments to show proof of any interest in "the Precedent Vested Landed Estate Jonathan Francisco." On October 7, 2024, [Father] filed a ["]Petition for Injunction,["] asking the trial court[:] to prevent [Mother] from restricting [Father's] access to the Child, [to] require [Father] to participate in mediation, and to remove any sanctions held against him. On October 22, 2024, [Father] filed a ["]Notice of Special Appearance.["] In his notice, [Father] declared himself a "Private American Civilian and National" and (seemingly) requested that the trial court demonstrate jurisdiction when he appears for the next custody conference.

On October 23, 2024, [Officer Gromen] held a custody conference with both parties in attendance. The subsequent order, issued November 4, 2024, again granted [Mother] sole legal and physical custody of the Child until [Father] filed his Verification form.

[Father] filed yet another ["]Petition for Injunction["] on October 30, 2024. The October 30, 2024 petition was a duplicate of the October 8, 2024 petition and made no novel requests of the trial court. On November 19, 2024, the trial court denied all of [Father's] outstanding petitions and ordered him to file a Verification form. [Father] filed another ["]Petition for Injunction["] on December 27, 2024, essentially reiterating the contents of [Father's] previous two petitions.

Judge Parsons, in an order on March 12, 2025, recused herself from the case. That order assigned the case to Judge Shawn P.

McLaughlin. [Father] filed an ["]Affidavit of Petitioner in Support of Motion to Dismiss and a Memorandum of Law in Support of Motion to Dismiss["] on April 21, 2025. … The trial court denied [Father's] outstanding motions by court order, issued on June 17, 2025, on the basis that the filings were frivolous and were not presented to the trial court pursuant to the applicable rules of procedure.

Pursuant to court order, [Father] filed a pre-trial memorandum on July 10, 2025. Following a pre-trial conference held on July 11, 2025, the trial court issued a post-trial conference order pursuant to [Rule] 1915.4-4(f) on July 29, 2025. [Father] filed a second pre-trial conference memorandum on July 17, 2025.

A custody hearing was held on August 25, 2025. Both parties attended self-represented. The trial court issued a final custody order and an opinion in [support] on September 4, 2025. [Father] filed a notice of appeal on September 4, 2025.

[The following facts were obtained at the custody hearing:]

[Father] resides in Denver, Lancaster County, Pennsylvania alone. [Father] has been at the Denver location since about 2019. [Father] performs barter services, including landscaping and estate planning services. He devotes 20-30 hours a week, or more, to these activities. He is single and has a driver's license and a vehicle he can use when he needs to. He has no children other than the Child. [Father] lives in the Cocalico School District. [Mother] resides in Lititz, Lancaster County, Pennsylvania. She lives alone, along with the Child. [Mother] has resided at the Lititz location for about 1.5 years. She pays the mortgage on the home of $1,000 per month, essentially allowing her to remain in the home. The home belongs to Maternal Grandmother. Before that, [Mother] lived in Manheim, Lancaster County, Pennsylvania. [Mother's] current location has 5 bedrooms, one of which is for the Child. [Mother] works fulltime for Cavolo Pizza in Lititz, Pennsylvania as a server, and has take-home pay of about $600-$900 per week. [Mother] is single, has a driver's license, and a car. She has no other children other than the Child. [Mother] lives in the Warwick School District.

… [T]he Child was 4 at the time of the trial and was not yet enrolled in school.

Trial Court Opinion, 10/24/25, at 1-5 (unnecessary capitalization, superscript, record citations, and footnote omitted).

On September 4, 2025, the trial court ordered shared legal custody and granted Mother primary physical custody. Father was given partial custody beginning with supervised physical custody once a week for 5 weeks to be supervised by Child First Family Services for at least four hours. After those 5 weeks of supervised visits, Paternal Grandmother was ordered to act as supervisor for 5 additional weeks on every Saturday. After 5 weeks of supervised visits with Paternal Grandmother, Father was to have 3 weekend visits supervised by Paternal Grandmother from Saturday at 11:00 a.m. until Sunday at 6:00 p.m. After Father successfully completes the supervised visits, the court ordered unsupervised physical custody on alternating weekends from Friday at 6:00 p.m. until Sunday at 6:00 p.m. and alternating Wednesday nights from 4:00 p.m. until 7:00 p.m. Father filed a notice of appeal that same date. He included his statement of errors within his notice of appeal. **See** Pa.R.A.P. 1925(a)(2)(i).

Father raises six issues for our review:

1. Whether the trial court abused its discretion and erred as a matter of law by restricting Father to supervised physical custody, and conditioning his later partial physical custody on completion of ten supervised visits, without competent evidence that he posed a risk of harm to [Child], contrary to 23 Pa.C.S.[A.] §§ 5328, 5329, 5329.1, 5330 and Pennsylvania custody practice, which reserve supervision for cases involving demonstrated danger or abuse[?]

2. Whether the trial court failed to conduct and articulate a complete 23 Pa.C.S.[A.] § 5328(a) factor analysis on the record, especially regarding which parent encourages contact, interference with communication, and Mother's admitted blocking and limiting Father's relationship with [Child], thereby requiring reversal or remand[?]

3. Whether the trial court violated Father's due process rights under the United States and Pennsylvania Constitutions by: (a) conditioning his ability to exercise physical custody on signing a criminal record/abuse history verification under Pa.R.C.P. 1915.3-2, and treating his objections as a basis to restrict custody; (b) ignoring Mother's non-appearance, relocation violations, and interference with contact; and (c) restricting Father's efforts to present contempt issues and jurisdictional challenges[?]

4. Whether the trial court's findings are based on speculation, hearsay, and selective credibility determinations—such as unqualified "mental illness" accusations and unfounded fears that Father would abscond—while ignoring exhibits and text records that showed Father's consistent efforts to maintain a relationship with his daughter, thereby constituting an abuse of discretion[?]

5. Whether the trial court abused its discretion, violated Pa.R.C.P. 1915.13, and denied Father due process by failing to timely rule on Father's time-sensitive Petition for Expedited Consideration and Temporary Relief[] filed August 29, 2025 so the Child could spend two possible weekends with her uncle before his permanent relocation[] and instead issuing a final order dated September 4, 2025 but effective September 15, 2025, after the requested weekends had passed, thereby frustrating the Child's relationship with extended family and creating an appearance of bias[?]

6. Whether the trial court violated due process by treating a non-consensual conference recommendation as a binding administrative order—despite Father's express rebuttal of consent and jurisdiction, multiple writs styled as quo warranto, and his request for an impartial adjudicator—thereby placing him at a structural disadvantage from the outset of the custody proceedings[?]

Appellant's Brief, at 5-7 (suggested answers and unnecessary capitalization omitted).

Initially, we must determine whether Father has preserved his claims for our review. Any issue not raised in a statement of errors is waived. ***See*** Pa.R.A.P. 1925(b)(4)(vii). We recognize that Father represented himself below and in this appeal, but he is still bound by our rules. ***See Noon v. Martin***, 884 MDA 2025, 885 MDA 2025, 2025 WL 3564214, at *2 (Pa. Super. filed Dec. 12, 2025) (unpublished memorandum).[1] We have previously stated:

> Although this Court is willing to liberally construe materials filed by a *pro se* litigant, *pro se* status confers no special benefit upon the appellant. To the contrary, any person choosing to represent [him]self in a legal proceeding must, to a reasonable extent, assume that [his] lack of expertise and legal training will be [his] undoing.

***Id.*** (citation omitted).

Even with liberally construing both his claims raised herein and his statement of errors, we find Father has preserved only issues 1, 2 and parts a and b of issue 3. The remainder of his claims were not raised in his statement and we find them waived.

We now turn to the issues preserved for our review. Our scope and standard of review on appeal from custody matters are well-established:

> The appellate court is not bound by the deductions or inferences made by the trial court from its findings of fact, nor must the reviewing court accept a finding that has no competent evidence to support it. However, this broad scope of review does not vest in the reviewing court the duty or the privilege of making its own independent determination. Thus, an appellate court is empowered to determine whether the trial court's incontrovertible

---

[1] This Court may rely on unpublished decisions filed after May 1, 2019, for their persuasive value. ***See*** Pa.R.A.P. 126(b)(1).

factual findings support its factual conclusions, but it may not interfere with those conclusions unless they are unreasonable in view of the trial court's factual findings; and thus, represent a gross abuse of discretion.

On issues of credibility and weight of the evidence, we defer to the findings of the trial court who has had the opportunity to observe the proceedings and demeanor of the witnesses. The parties cannot dictate the amount of weight the trial court places on evidence. Rather, the paramount concern of the trial court is the best interest of the child. Appellate interference is unwarranted if the trial court's consideration of the best interest of the child was careful and thorough, and we are unable to find any abuse of discretion.

The test is whether the evidence of record supports the trial court's conclusions.

*C.M. v. M.M.*, 215 A.3d 588, 591 (Pa. Super. 2019) (ellipses, brackets, and citations omitted). Furthermore, we have held that "[a]ll of the factors listed in section 5328(a) are required to be considered by the trial court when entering a custody order." *A.M.S. v. M.R.C.*, 70 A.3d 830, 836 (Pa. Super. 2013) (citation and emphasis omitted).[2]

After reviewing the certified record, Father's brief,[3] applicable law, and the Honorable Shawn P. McLaughlin's well-reasoned 23-page opinion, we

---

[2] We note that in June of 2025, Section 5328(a) was amended. However, this amendment did not take effect until August 29, 2025. Because the custody hearing in this matter was held prior to the effective date of the amendments, the trial court correctly utilized the 16 custody factors in effect at the time of the hearing. *See C.R.F. v. S.E.F.*, 45 A.3d 441, 445 (Pa. Super. 2012) (finding that revised provisions apply when the hearing is held after the effective date of the amendment).

[3] Mother did not file an appellee's brief.

conclude Father's preserved issues do not entitle him to any relief. The trial court closely reviewed the record and made all necessary findings:

- finding temporary supervised custody met the best interests of Child because she had not spent any time with Father in over a year;

- the relationship between Father and Child is not fully developed;

- the court had little evidence to show Father is currently capable of caring for Child;

- the stability of Child, including that Father can show through those visits that he can support Child both physically and emotionally;

- the trial court detailed all 16 custody factors in its written opinion;

- the court considered Father's exhibits showing his attempts to speak to Child and the fact that Mother blocked Father's number but found "the conflict between the parties in this case was a two-way street";

- Father's "alienat[ion] from his daughter is [due to] his unwillingness to abide by the rules and statutes governing custody process and the court's instruction in furtherance thereof";

- and that Father was required by law to file the Verification form and failed to do so despite multiple court orders and reminders in court to file it; and no due process violations were committed.

*See* Trial Court Opinion, 10/24/25, at 5-23.

Therefore, we affirm on the basis of the cogent and thoughtful 23-page opinion of the Honorable Shawn P. McLaughlin dated October 24, 2025, which we have attached hereto for the convenience of the parties.

Order affirmed.

Judgment Entered.

_____
Benjamin D. Kohler, Esq.
Prothonotary

Date: 03/09/2026